UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| LAVVAN, INC., | |
| Plaintiff, | |
| -against- | |
| AMYRIS, INC., | |
| Defendant. | |

No. 20-cv-07386 (JPO)

<u>Oral Argument Requested</u>

**<u>MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANT AMYRIS, INC.'S MOTION TO COMPEL ARBITRATION OR, IN THE
ALTERNATIVE, TO DISMISS FOR FAILURE TO STATE A CLAIM UNDER
FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)</u>**

## TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ................................................................................. 1

FACTUAL BACKGROUND .................................................................................... 3

ARGUMENT .......................................................................................................... 6

    A.    This Court Should Compel Lavvan To Arbitrate This Matter .............................. 6

        1.    The RCLA Contains a Valid and Enforceable Arbitration
            Agreement ....................................................................................... 7

        2.    Questions of Arbitrability Must be Resolved by the Arbitrator ............... 7

        3.    Even If The Court Considers Scope, Lavvan's Claims Are
            Disputes Subject to Arbitration.................................................................. 9

    B.    In the Alternative, If the Court Considers the Claims, It Should Dismiss
        Them Under Rule 12(b)(6) ..................................................................... 12

        1.    Lavvan's Patent Infringement Claim Is Plainly Frivolous. .................... 13

        2.    Lavvan Fails To Plead A Plausible Claim Of Trade Secret
            Misappropriation..................................................................................... 15

            a.    Lavvan Fails to Sufficiently Plead the Existence of a Trade
                Secret........................................................................................... 16

            b.    The Complaint Fails to Allege the Misappropriation of a
                Trade Secret ................................................................................ 19

CONCLUSION....................................................................................................... 20

## TABLE OF AUTHORITIES

Page(s)

### Cases

*1414 Realty Corp. v. G & G Realty Co.*,
    272 A.D.2d 309 (2d Dep't 2000) ...........................................................................11

*Ad Lightning Inc. v. Clean.io, Inc.*,
    2020 WL 4570047 (S.D.N.Y. Aug. 7, 2020) ...........................................................19

*Alexander Interactive, Inc. v. Leisure Pro Ltd.*,
    2014 WL 4651942 (S.D.N.Y. Sept. 16, 2014)..........................................................16

*Am. E Grp. LLC v. Livewire Ergogenics Inc.*,
    432 F. Supp. 3d 390 (S.D.N.Y. 2020)........................................................................6

*Am. Sales Co., Inc. v. AstraZeneca AB*,
    2011 WL1465786 (S.D.N.Y Apr. 14, 2011)............................................................14

*Anchor Sales & Mktg., Inc. v. Richloom Fabrics Grp., Inc.*,
    2016 WL 4224069 (S.D.N.Y. Aug. 9, 2016) ...........................................................13

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)........................................................................................12, 13, 18

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)........................................................................................12, 14, 16

*Brine v. 65th St. Townhouse LLC*,
    2008 WL 3915784 (Sup. Ct. N.Y. Cty. 2008) ........................................................12

*Contec Corp. v. Remote Sol. Co.*,
    398 F.3d 205 (2d Cir. 2005).............................................................................7, 8, 9

*Elsevier Inc. v. Doctor Evidence, LLC*,
    2018 WL 557906 (S.D.N.Y. Jan. 23, 2018) ......................................................16, 18

*Grecia v. McDonald's Corp.*,
    724 Fed. App'x 942 (Fed. Cir. 2018)..................................................................13, 15

*Green Tree Fin. Corp. v. Randolph*,
    531 U.S. 79 (2000).....................................................................................................7

*Intell. Ventures I LLC v. Motorola Mobility LLC*,
    870 F.3d 1320 (Fed. Cir. 2017).................................................................................13

## TABLE OF AUTHORITIES
(continued)

Page(s)

*Island Intell. Prop., LLC v. StoneCastle Asset Mgmt. LLC*,
    2020 WL 2793000 (S.D.N.Y. May 29, 2020) .......................................................16

*Khanna v. Am. Express Co.*,
    2011 WL 6382603 (S.D.N.Y. Dec. 14, 2011) .........................................................7

*Koninklijke Philips Electronics N.V. v. The ADS Grp.*,
    694 F. Supp.2d 246 (S.D.N.Y. 2010)......................................................................13

*L.M. Sessler Excavating & Wrecking, Inc. v. Bette & Cring, LLC*,
    2017 WL 4652709 (S.D.N.Y. Oct. 17, 2017).........................................................14

*Lawrence v. NYC Med. Prac., P.C.*,
    2019 WL 4194576 (S.D.N.Y. Sept. 3, 2019)..........................................................18

*Macronix Int'l Co. v. Spansion Inc.*,
    4 F. Supp. 3d 797 (E.D. Va. 2014) .........................................................................14

*Moses H. Cone Memorandum Hosp. v. Mercury Constr. Corp.*,
    460 U.S. 1 (1983).......................................................................................................6

*N. Star Innovations, Inc. v. Micron Tech., Inc.*,
    2017 WL 5501489 (D. Del. Nov. 16, 2017)...........................................................14

*Preston v. Ferrer*,
    552 U.S. 346 (2008)...................................................................................................6

*Principia Partners LLC v. Swap Fin. Grp., LLC*,
    2019 WL 4688711 (S.D.N.Y. Sept. 26, 2019)........................................................17

*Regeneron Pharm., Inc. v. Merus B.V.*,
    2014 WL 2795461 (S.D.N.Y. June 18, 2014) ........................................................13

*Shaw Grp. Inc. v. Triplefine Int'l Corp.*,
    322 F.3d 115 (2d Cir. 2003)............................................................................1, 7, 8, 9

*Starr v. Sony BMG Music Entm't*,
    592 F.3d 314 (2d Cir. 2010).....................................................................................12

*Universal Processing LLC v. Zhuang*,
    2018 WL 4684115 (S.D.N.Y. Sept. 28, 2018).............................................16, 17, 18

*Vera v. Saks & Co.*,
    335 F.3d 109 (2d Cir. 2003)......................................................................................6

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*VRG Linhas Aereas S.A. v. MatlinPatterson Global Opportunities Partners II
    L.P.*,
    717 F.3d 322 (2d Cir. 2013)...............................................................................2, 7

**Statutes**

9 U.S.C. § 2 ..........................................................................................................6

18 U.S.C. § 1836(b)(1) .......................................................................................15

18 U.S.C. § 1839(3) ............................................................................................18

18 U.S.C. § 1839(5) ............................................................................................19

18 U.S.C. § 1839(6) ............................................................................................19

**Rules**

AAA Rule R–7(a) ..................................................................................................8

ICC Rule 6.2 ..........................................................................................................8

## PRELIMINARY STATEMENT

████████████████████████████████████████████████████████████████████

██████████████████████████████████████████████. The Complaint that Plaintiff Lavvan filed—which it coupled with an aggressive media campaign launched the very day of its filing—is ██████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

██████. Lavvan alleges that Amyris has violated its obligations under the parties' Research, Collaboration and License Agreement (the "RCLA" or the "Agreement"). Lavvan is mistaken. Amyris's independent efforts to produce cannabinoids are entirely consistent with the RCLA.

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

██████████████████████████████████████████████. Those rules, which these sophisticated parties selected with the assistance of experienced counsel, state that disputes about the jurisdiction of the arbitrator are committed to the arbitrator for resolution. This is, therefore, a simple motion. There is an arbitration agreement between the parties—indeed, an existing arbitration—and these claims should be resolved there. Because it is the law of this Circuit that parties adopting an agreement incorporating the ICC rules expressly commit any disputes about the scope of the arbitration to the arbitrator, *see Shaw Grp. Inc. v. Triplefine Int'l Corp.*, 322 F.3d 115, 122–23 (2d Cir. 2003), Lavvan is barred from contesting (in this Court) the arbitrability of this dispute.

Lavvan seeks to avoid this result by pointing to an exception in the RCLA's arbitration provision for "intellectual property" disputes, and thus Lavvan purports to assert trade secret and patent claims here.  But even the threshold question of whether Lavvan's claims fall within this contractual exception is a determination committed to the discretion of the arbitrator.  *VRG Linhas Aereas S.A. v. MatlinPatterson Global Opportunities Partners II L.P.*, 717 F.3d 322, 326 (2d Cir. 2013) ("an arbitration clause subjecting disputes to the rules and procedures of the ICC International Court of Arbitration clearly and unmistakably commits to arbitration any questions about the arbitrability of particular disputes").  Accordingly, this Complaint must be dismissed and the issues Lavvan raises must be sent to the arbitrator, who is the only one with jurisdiction to make this threshold determination.

Even if that were not the case, Lavvan has not pleaded intellectual property claims that could survive dismissal in any event. ████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████.  The resulting Complaint is precisely what one would expect such a process to produce: a wholly deficient set of intellectual property claims.  The patent claims, for example, neither name an accused product nor contain an element-by-element analysis as is required in this Circuit; instead the Complaint simply lists 20 patents and asserts—without analysis—that Amyris infringes "some or all" of them.  This is not nearly enough to state a valid intellectual property claim.  The trade secret claims fare no better; they also lack the legally required specificity.  Even worse, the asserted patents and trade secrets *belong to Amyris*.  Lavvan claims that, under the RCLA, it now has exclusive rights to them.  But this raises an obvious issue: these claims would require this Court to interpret the RCLA ██████████████████████████████████████████.

While it may pretend otherwise, Lavvan filed this public Complaint (and pursued its public relations campaign) in a transparent attempt to negatively impact Amyris. However, its case may not proceed in this Court pursuant to the parties' prior agreement to arbitrate. Even if that were not the case, the case should be dismissed outright given the deficiencies in Lavvan's own pleadings. Defendant's motion should be granted.

## FACTUAL BACKGROUND

Defendant Amyris, Inc. is a leading synthetic biotechnology company in the beauty and clean health markets, and a top supplier of sustainable and natural ingredients. Amyris's business model is founded on deep, long-term partnerships with global industry leaders that have continuously developed their long-term relationships with Amyris.

On March 19, 2019, Amyris and Lavvan executed the RCLA, an agreement in which Lavvan would pay Amyris up to $300 million in milestone payments for the development of certain designated biosynthetic cannabinoids, and certain royalty payments based on Lavvan's commercial sales of such cannabinoids. Amyris entered into its partnership with Lavvan with the intention to create the best science around cannabinoids and to enable Lavvan to commercialize and deliver real solutions to market. Under the terms of the RCLA, Amyris granted Lavvan a license to use certain of Amyris's patents and other similar proprietary rights for the manufacture and commercialization of cannabinoids in the "Lavvan Field." *See* RCLA §§ 1.4–1.8, 1.19, 1.68, 5.6 (Dkt. No. 1-1, Ex. A). The RCLA defines the "Lavvan Field" to mean "all uses excluding the F&F Market," and defines the "F&F Market" to mean "the worldwide market for Flavor(s) and/or Fragrance(s) in consumer and industrial grade products … and products designed for consumption." RCLA §§ 1.73, 1.53.

After the parties executed the RCLA, it quickly became apparent to Amyris that Lavvan would not be upholding its end of the deal. Specifically, under Section 11.3.1 of the RCLA,

Lavvan represented that it "… has full power and authority and right to own and operate its property and assets and to carry on its business now and as contemplated to be conducted under this Agreement." RCLA § 11.3.1. This representation appears to have been untrue; Amyris has repeatedly sought assurances over the past year confirming that Lavvan has adequate funding sources to comply with its obligations under the RCLA. Lavvan has not provided them. The failure to confirm such a fundamental component of the arrangement between the parties imbued the partnership with an unacceptable level of uncertainty while Amyris continued to incur steep development costs in upholding its research and development obligations under the RCLA. This and other behavior by Lavvan compelled Amyris to pursue other opportunities to progress its cannabinoid science, albeit only ones expressly permitted by the parties' agreements. For example, Amyris proceeded in developing molecules in the flavors and fragrances market—a field the RCLA reserves for Amyris because it operates within the exclusions to the Lavvan Field. *See* RCLA §§ 1.73, 1.53, 5.6.

Lavvan, however, has now decided that it is dissatisfied with the scope of the RCLA, and is seeking to expand its contractual rights through litigation. But the RCLA specifies how such disagreements are to be handled: if the parties are unable to resolve a dispute themselves, it was to be resolved pursuant to arbitration. RCLA §§ 3.2.4, 7.1.1. Section 7.1.1 of the RCLA, entitled "Arbitration," provides as follows:

> All disputes that cannot be resolved by the management of both Parties pursuant to Section 3.2.4 *will be finally settled under the Rules of Arbitration of the International Chamber of Commerce (the "ICC Rules") by an arbitration tribunal appointed in accordance with the said ICC Rules as modified hereby*, and judgment upon the award rendered may be entered in any court having jurisdiction thereof. The decision of the arbitrator as to any claim or dispute shall be final, binding, and conclusive upon the Parties.

RCLA § 7.1.1 (emphasis added).

Over five subsequent subsections, the RCLA lays out the parameters of such arbitrations, including the provision that "[a]ll information regarding arbitration (including the fact that the arbitration is taking place) shall be deemed Confidential Information and all arbitrators, witnesses and other involved Persons shall be required to agree to maintain such confidentiality in accordance with the provisions of Section 8 hereof." RCLA § 7.1.1(e). The RCLA allows for the parties to resolve good-faith intellectual property disputes in court. Section 7.2.1 of the RCLA, entitled "Intellectual Property Disputes," reads:

> In the event that a dispute arises with respect to the scope, ownership, validity, enforceability, revocation or infringement of any Intellectual Property, and such dispute cannot be resolved by the management of both Parties in accordance with Section 3.2.4, unless otherwise agreed by the Parties in writing, such dispute will not be submitted to arbitration and either Party may initiate litigation solely in a court or other tribunal of competent jurisdiction in the country of issuance, registration, application or other protection, as applicable, of the item of Intellectual Property that is the subject of the dispute.

RCLA § 7.2.1.



On September 10, 2020 Lavvan filed this suit.



## ARGUMENT

### A.   This Court Should Compel Lavvan To Arbitrate This Matter

This action must be sent to the arbitral forum.  Lavvan's claims against Amyris are subject to a valid and enforceable arbitration provision that requires Lavvan to arbitrate its claims in the ICC.  By selecting the ICC rules, Amyris and Lavvan not only agreed to arbitrate their disputes, they also agreed that whether any given dispute falls within the arbitration clause must be decided by the arbitrator.  This motion is thus not complicated: the Court should honor the parties' agreement and send this case to arbitration, where—as intended by the parties—the arbitrator will decide whether the dispute falls within the scope of the agreement.

The law on this point is straightforward: under federal law, an agreement to submit a dispute to arbitration is "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.  The United States Supreme Court has repeatedly made clear the importance of the policy choice enshrined in the FAA in favor of arbitration.  *See e.g. Preston v. Ferrer*, 552 U.S. 346, 349 (2008) (FAA "establishes a national policy favoring arbitration when the parties contract that mode of dispute resolution."); *Moses H. Cone Memorandum Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983) (Section 2 of the FAA is "a congressional declaration of a liberal federal policy favoring arbitration agreements.").  Enforcement of arbitration agreements is *mandatory*: the FAA "requires the federal courts to enforce arbitration agreements, reflecting Congress's recognition that arbitration is to be encouraged as a means of reducing the costs and delays associated with litigation."  *Vera v. Saks & Co.*, 335 F.3d 109, 116 (2d Cir. 2003) (internal quotation marks omitted).  Where, as here, a valid arbitration agreement exists, a court "must stay or dismiss further judicial proceedings and order the parties to arbitrate."  *Am. E Grp. LLC v. Livewire Ergogenics Inc.*, 432 F. Supp. 3d 390, 396 (S.D.N.Y. 2020) (citation and internal quotation marks omitted).

Crucially, the burden on this motion lies with Lavvan: "[t]he party resisting arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration." *Khanna v. Am. Express Co.*, 2011 WL 6382603, at *2 (S.D.N.Y. Dec. 14, 2011) (quoting *Green Tree Fin. Corp. v. Randolph*, 531 U.S. 79, 91 (2000)).

      1.    <u>The RCLA Contains a Valid and Enforceable Arbitration Agreement</u>.

Section 7.1.1 of the RCLA represents a clear expression of an agreement to arbitrate. It states that "all disputes that cannot be resolved by the management of both Parties pursuant to Section 3.2.4 *will be finally settled under the Rules of Arbitration of the International Chamber of Commerce (the 'ICC Rules') by an arbitration tribunal appointed in accordance with the said ICC Rules*." RCLA § 7.1.1 (emphasis added).

There is no dispute that Plaintiff agreed to be bound by the RCLA. Lavvan itself has pleaded the existence of the document—the RCLA—containing the arbitration provision, ███████. It cannot now claim the provision is invalid.

      2.    <u>Questions of Arbitrability Must be Resolved by the Arbitrator</u>.

Lavvan's inevitable response—that RCLA § 7.2.1 permits intellectual property disputes to be litigated—is totally irrelevant to this motion. The Second Circuit has made clear that when "parties explicitly incorporate rules that empower an arbitrator to decide issues of arbitrability, the incorporation serves as clear and unmistakable evidence of the parties' intent to delegate such issues to an arbitrator." *Contec Corp. v. Remote Sol. Co.*, 398 F.3d 205, 208 (2d Cir. 2005). Therefore, even "where an agreement 'does not specifically assign the determination of arbitrability to the arbitrator,' a provision to have all disputes resolved according to ICC rules evidences the parties' 'agree[ment] to let the arbitrator decide questions of arbitrability.'" *Shaw Grp. Inc.*, 322 F.3d at 122–23; *see also VRG Linhas Aereas S.A.*, 717 F.3d at 326 ("an arbitration clause subjecting disputes to the rules and procedures of the ICC International Court of Arbitration

clearly and unmistakably commits to arbitration any questions about the arbitrability of particular disputes").

The Second Circuit has even ruled on the particular ICC Rules at issue here; it has held that the invocation of the ICC Rules creates a presumption that the parties intended to commit questions of arbitrability to the arbitrator. The ICC Rules "specifically provide[ ] for the ICA, the arbitral body of the ICC, to address questions of arbitrability, either *sua sponte* before an answer is filed or at the specific request of any party." *Shaw Grp. Inc.*, 322 F.3d at 121; ICC Rule 6.2 ("If any party against which a claim has been made does not submit an Answer, or if any party raises one or more pleas concerning the … scope of the arbitration agreement …, … any question of jurisdiction … shall be decided directly by the arbitral tribunal."); *see also Contec Corp.*, 398 F.3d at 208 (holding that signatories intended to delegate issues of arbitrability where the underlying arbitration agreement incorporated the Commercial Arbitration Rules of the American Arbitration Association ("AAA") and Rule 7 of the AAA Rules stated, "with respect to jurisdiction that '[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement.'" (quoting AAA Rule R–7(a)).

The parties here invoked the ICC Rules in much the same way as the parties in *Shaw*. The RCLA provides:

> *All disputes* that cannot be resolved by the management of both Parties pursuant to Section 3.2.4 *will be finally settled under the Rules of Arbitration of the International Chamber of Commerce (the "ICC Rules") by an arbitration tribunal appointed in accordance with the said ICC Rules as modified hereby*, and judgment upon the award rendered may be entered in any court having jurisdiction thereof.

RCLA § 7.1.1 (emphasis added). There can be no dispute that the parties, in executing the RCLA, consented to being bound by the ICC Rules. And there can thus be no dispute that the parties

consented to the arbitrator determining the scope of the arbitral provision.  *See Contec Corp.*, 398 F.3d at 208 (arbitration compelled where parties "explicitly incorporate rules that empower an arbitrator to decide issues of arbitrability").

The RCLA contains nothing that would alter the default presumption regarding arbitrability.  To the contrary, the parties clearly indicated an intent to accept those rules.  The broad language of Section 7.1.1 of the RCLA reads that "all disputes" "will be finally settled under the Rules of Arbitration of the International Chamber of Commerce (the "ICC Rules") by an arbitration tribunal appointed in accordance with the said ICC Rules."  RCLA § 7.1.1.  Critically, the parties knew how to modify the application of the ICC Rules.  Section 7.1.1 of the RCLA sets forth certain provisions that "modif[y]" the ICC Rules the parties submit to.  There is no mention of any desire to modify the ICC Rules regarding questions of arbitrability.  Had the parties intended to exempt questions regarding the scope of arbitration from the jurisdiction of the arbitrator they could easily have done so.  They did not.  It thus follows, as a simple matter of contractual interpretation, that questions of arbitrability belong to the arbitrator.

This Court must therefore follow the Second Circuit: "Because the arbitration agreement at issue in this case provides for all disputes between the parties to be referred to the International Chamber of Commerce ('ICC'), and because the rules of that organization expressly provide for the International Court of Arbitration ('ICA') to resolve in the first instance any disputes about its own jurisdiction, … the arbitrability of [Lavvan's patent infringement and trade secret] claim[s] … [i]s a question for the arbitrator rather than the court."  *Shaw Grp. Inc.*, 322 F.3d at 118.

       3.     <u>Even If The Court Considers Scope, Lavvan's Claims Are Disputes Subject to Arbitration</u>.

Even if this Court were to conclude that it should decide the issue of arbitrability itself, which is contrary to the parties' agreement, a brief review of Lavvan's claims reveals that its

allegations are not truly good-faith disputes about the "scope, ownership, validity, enforceability, revocation or infringement of any Intellectual Property" as that phrase is used in Section 7.2.1 of the RCLA.  There are at least two reasons that this is so.

*First*, Lavvan's own statements confirm these are not intellectual property disputes.



These are, in fact, issues of contract interpretation subject to arbitration.  To put it more directly, while the RCLA permits the filing of certain *legitimate, good-faith* intellectual property disputes in court, the Complaint does not assert a single good-faith intellectual property claim.

*Second*, Lavvan has not even *attempted* to comply with the pleading requirements for the claims it asserts.  It merely lists almost two dozen patents and claims that Amyris must infringe some or all of them.  That does not come close to being enough, even under the most liberal pleading standards.  The strongest evidence that these are contract claims are Lavvan's own actions.  What's more, all of the asserted patents in this litigation are owned by Amyris.  Lavvan's rights to the intellectual property—which do not include ownership rights—only exist by operation of the RCLA.  In order for its allegations to pass muster, Lavvan must first prove its right to assert Amyris's intellectual property against Amyris itself.  ██████████████████████  ██████████████████████████████  An essential prerequisite to Lavvan's intellectual property claims is that Amyris somehow violated the RCLA.  ████████████

██████████████████████████████████████████████████

████████████████████████

As one specific example, Lavvan accuses Amyris of developing certain cannabinoids in violation of its obligations under the RCLA.  Compl. ¶¶ 242–45.  However, Amyris's right to proceed with the development of cannabinoids for the flavors and fragrances field is expressly permitted under the RCLA.  To demonstrate this is so, Amyris would submit evidence regarding the proper interpretation of multiple defined contractual terms of the Agreement, including but not limited to: "Amyris Background IP," "Amyris Cannabinoid Foreground IP," "Amyris Foreground IP," "Amyris IP," "Background IP," "F&F Market," "Flavor," "Foreground IP," "Fragrance," and "Lavvan Field."  RCLA §§ 1.4, 1.5, 1.6, 1.7, 1.19, 1.53, 1.55, 1.56, 1.57, 1.73.  The Court, in turn, would be required to interpret these provisions.  In other words, to the extent that there are actually intellectual property issues present, their metes and bounds are defined by the RCLA.  ████████

█████████████████████████████████████████████████

█████████████████████████████████████████████████

█████████████████████████████████████████████████

████████████████████████████████████████  There is no legal, contractual or practical reason for this Court to waste its time in this manner.

Lavvan's trade secret claim fares no better.  This allegation *expressly* depends upon a breach of contract finding.  Lavvan alleges that "Amyris used improper means to acquire knowledge of the trade secrets *by failing to abide by the RCL Agreement's confidentiality and other provisions*."  *See* Compl. ¶ 231 (emphasis added).  This allegation does not sufficiently plead a claim of misappropriation at all.  *See infra*, Section B.2.b.  To the extent it pleads anything cognizable, this is, by its very terms, a contract claim.  *1414 Realty Corp. v. G & G Realty Co.*,

272 A.D.2d 309, 309 (2d Dep't 2000) ("Here the plaintiff demonstrated a *viable cause of action alleging breach of contract* based upon the defendants' alleged failure to abide by certain terms of the escrow agreement." (emphasis added)); *Brine v. 65th St. Townhouse LLC*, 2008 WL 3915784, at *6 (Sup. Ct. N.Y. Cty. 2008) ("*A cause of action sounding in breach of contract* is certainly a sufficient remedy for [plaintiff] to recover his loss from Sponsor Defendant[']s alleged failure to abide by the agreement's terms.") (emphasis added).

Lavvan's claims are thus not intellectual property disputes at all.  They are contractual disputes and they fall within the scope of the RCLA.  Lavvan is thus bound by the RCLA's provisions requiring the resolution of disputes by binding arbitration.  Accordingly, the Court should refer the entire proceeding to arbitration.

## B.   In the Alternative, If the Court Considers the Claims, It Should Dismiss Them Under Rule 12(b)(6)

In the event that this Court decides to address the issues itself, it should dismiss Lavvan's claims for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6).  The Complaint's two claims, for patent infringement and misappropriation of trade secrets, are both woefully inadequate.  To survive a motion to dismiss, a complaint must allege "enough facts to state a claim to relief that is plausible on its face."  *Starr v. Sony BMG Music Entm't*, 592 F.3d 314, 321 (2d Cir. 2010) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (same).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.  Lavvan cannot satisfy this standard.

Lavvan's pleading obligation "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Starr*, 592 F.3d at 321 (quoting

*Twombly*, 550 U.S. at 555).  "[N]aked assertions devoid of further factual enhancement" are not sufficient to survive a motion to dismiss, and "mere conclusory statements" or "[t]hreadbare recitals of the elements of a cause of action" are given no weight.  *Iqbal*, 556 U.S. at 678 (internal citations and quotation marks omitted).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint should be dismissed.  *Id.* at 679.

1.    Lavvan's Patent Infringement Claim Is Plainly Frivolous.

Lavvan utterly fails to allege several of the basic requirements to state a cause of action for patent infringement.  Even where compliance with the pleading standard is actually attempted, the allegations set out in the Complaint are entirely conclusory.

To state a claim of direct infringement, a plaintiff must allege facts that plausibly show the accused products practice each element of the asserted patent claims.  *Intell. Ventures I LLC v. Motorola Mobility LLC*, 870 F.3d 1320, 1329 (Fed. Cir. 2017); *see also Grecia v. McDonald's Corp.*, 724 Fed. App'x 942, 946–47 (Fed. Cir. 2018) (affirming district court's dismissal of complaint because it failed to explain how defendant benefitted from each and every element of the claimed system).  The *Iqbal/Twombly* standard applies to actions for patent infringement.  *See Anchor Sales & Mktg., Inc. v. Richloom Fabrics Grp., Inc.*, 2016 WL 4224069, at *3–*4 (S.D.N.Y. Aug. 9, 2016) ("The principles set forth in [*Twombly*] apply to the evaluation of pleadings in patent infringement cases in this Circuit.") (quoting *Regeneron Pharm., Inc. v. Merus B.V.*, 2014 WL 2795461, at *1 (S.D.N.Y. June 18, 2014)).

Lavvan's claims against Amyris consist solely of bare conclusory allegations and legal conclusions that this Court has said on multiple occasions cannot survive a motion to dismiss.  *See Koninklijke Philips Electronics N.V. v. The ADS Grp.*, 694 F. Supp.2d 246, 251 (S.D.N.Y. 2010) ("While a complaint attacked by a Rule 12(b)(6) motion does not need detailed factual allegations, a

13

plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.") (quoting *Twombly*, 550 U.S. at 555 (1955)); *see also Am. Sales Co., Inc. v. AstraZeneca AB*, 2011 WL1465786 at *5 (S.D.N.Y Apr. 14, 2011) (granting Defendants' motion to dismiss because the Complaint failed to comport the basic standards of notice pleading). The Complaint lists almost two dozen patents—all owned by Amyris—that disclose the production of molecules that allegedly may be used to produce cannabinoids. Then, without support, it states that because Amyris is developing cannabinoids using its "biotechnology platform" to "engineer yeast," it must be using the very methods disclosed by the licensed patents to produce cannabinoids from yeast strains. *See* Compl. ¶ 244. Lavvan provides no factual support for its claim that Amyris's "biotechnology platform" uses the methods that are licensed to Lavvan. It is hard to overstate how deficient conclusory allegations of this sort are. It would not be enough if Lavvan had parroted the claim language of the patents at issue. *See e.g.*, *N. Star Innovations, Inc. v. Micron Tech., Inc.,* 2017 WL 5501489, at *2 (D. Del. Nov. 16, 2017) (granting Defendants' motion to dismiss because the complaint "does little more than parrot back the language of these claim elements and then states that the accused product is comprised of such elements").[2] But Lavvan's Complaint does not even rise to the level of parroting. It instead uses broad, general layperson's language to describe both the patents and how Amyris supposedly practices "some or all" of the purported inventions disclosed therein— to the extent it even bothers to describe that.[3] Compl. ¶¶ 243, 244.

---

[2]  *See also L.M. Sessler Excavating & Wrecking, Inc. v. Bette & Cring, LLC,* 2017 WL 4652709, at *4 (S.D.N.Y. Oct. 17, 2017); *Macronix Int'l Co. v. Spansion Inc.*, 4 F. Supp. 3d 797, 804 (E.D. Va. 2014).

[3]  In those rare places that Lavvan attempts to analyze the patents, Lavvan provides a one-sentence description for five patents (the '097, '296, '822, '363, and '518 Patents), copying it word-for-word for each except for the patent issue date. See Compl. ¶ 240 ("This patent concerns the production of isoprenoids through fermentation."). For others, Lavvan provides two-sentence and three-sentence near replicas for additional sets of patents. *Id.* (first set of patents with a two-sentence copy-and-paste description: '136, '800, '261, and '941 Patents; second set of patents with a two-sentence copy-and-paste description: '886, '017, '282, and '882; and a single set of patents with a three-sentence copy-and-paste description: '026, '147, '089, '825, and '682).

The Complaint does not address *any* claim element of *any* allegedly infringed patent.  Indeed, Lavvan does not even identify a single claim of any of the asserted patents or explain the basis for its belief that any of these patents are at issue.  Rather than providing any sort of claim or factual analysis, the Complaint merely lists out 20 patents and then repeats threadbare and conclusory statements that Amyris infringes *unidentified* claims of "some or all of the Patents."  *See* Compl. ¶¶ 243, 244.  Lavvan lists out the patents and describes them in a copy-and-paste fashion, loosely grouping them in three categories without identifying any claims, and "summarizes" each of them in one simple paragraph.  *See e.g.*, *id.* at ¶ 240.  In place of a proper analysis, Lavvan offers a general description of the contents of each patent, prefacing each with a reference to an Amyris press release.  *See e.g.*, *id.* at ¶ 244 (alleging that because 15 of Amyris's patents "include claims covering the production of such molecules and precursors" that "Amyris is currently using, or will imminently use, some or all of the Pathway Patents and Additional Pathways Patents")  For example, ███████████████

███████████████████████████████████████████████████████

Compl. ¶ 242.  Lavvan has not alleged facts that make it plausible each limitation of the asserted claims is satisfied by the accused products.  *See Grecia*, 724 Fed. App'x at 946–47.  Lavvan does not even *discuss* the claim language.  The Complaint makes no attempt to describe Amyris's practices nor does it identify the alleged factual connection between Amyris's practice and any claims of the asserted patents.  Such conclusory allegations utterly fail to put Amyris on notice as to the basis of any claim of patent infringement, and the claim must be dismissed.

      2.     <u>Lavvan Fails To Plead A Plausible Claim Of Trade Secret Misappropriation</u>.

Lavvan's trade secret claim is, if anything, more deficient than its patent claim.  To state a claim for misappropriation under the Defend Trade Secrets Act ("DTSA"), a plaintiff must allege that (i) it possessed a trade secret, which (ii) the defendant misappropriated.  18 U.S.C. § 1836(b)(1).  The Complaint fails to adequately plead either of these necessary elements.

a.      Lavvan Fails to Sufficiently Plead the Existence of a Trade Secret.

It is axiomatic that to plead a DTSA claim, Lavvan must plead that it possessed a trade secret.  Its burden is to "put forth specific allegations as to the information owned and its value." *Elsevier Inc. v. Doctor Evidence, LLC*, 2018 WL 557906, at *4 (S.D.N.Y. Jan. 23, 2018).  While it is not necessary to plead every aspect of the alleged trade secret, a plaintiff is required to provide more than conclusory allegations of the trade secret at issue in order to satisfy the pleading requirements set forth in *Twombly* and *Iqbal*.  *See Island Intell. Prop., LLC v. StoneCastle Asset Mgmt. LLC*, 2020 WL 2793000, at *7 (S.D.N.Y. May 29, 2020) (Oetken, J.) (rejecting plaintiff's "nebulous" pleadings that "identif[ied] only at the highest level of generality the subject matter of the secrets"); *see also Alexander Interactive, Inc. v. Leisure Pro Ltd.*, 2014 WL 4651942, at *5 (S.D.N.Y. Sept. 16, 2014) (dismissing trade secret claim upon plaintiff's failure to generally identify the trade secrets at issue, how they were used in plaintiff's business, and how they provided plaintiff with an economic advantage).  Specifically, *Twombly* and *Iqbal* "require[] that the complaint allege facts sufficient to identify the information for which protection is claimed and sufficient information about its nature, value, and measures taken to safeguard it to support an inference that the information qualifies as a trade secret."  *Universal Processing LLC v. Zhuang*, 2018 WL 4684115, at *3 (S.D.N.Y. Sept. 28, 2018).  If a court cannot infer "more than the mere possibility of misconduct from the factual averments—in other words, if the well-pleaded allegations of the complaint have not 'nudged [plaintiff's] claims across the line from conceivable to plausible'—dismissal is appropriate."  *Elsevier*, 2018 WL 557906, at *2 (quoting *Twombly*, 550 U.S. at 570).

While "there is no one-size-fits all definition to a trade secret [under either the DTSA or New York trade secret misappropriation law]," Courts in this District generally consider the following six factors:

(1) the extent to which the information is known outside of the business;
(2) the extent to which it is known by employees and others involved in the business;
(3) the extent of measures taken by the business to guard the secrecy of the information;
(4) the value of the information to the business and its competitors;
(5) the amount of effort or money expended by the business in developing the information; and
(6) the ease or difficulty with which the information could be properly acquired or duplicated by others.

*Universal Processing*, 2018 WL 4684115, at *3 (citations omitted).  Lavvan fails to describe *any* of these factors when referring to its alleged trade secrets.  Instead, Lavvan conclusorily asserts that its trade secrets are "not generally known" without providing any additional detail as to the extent to which the information is known or unknown.  Compl. ¶¶ 107, 146, 218.  Lavvan also declares that it "took security very seriously" and "had to expend effort" and "funds" to develop the trade secrets, but provides very few details about any of the foregoing undertakings and expenditures.  *Id.* ¶¶ 107, 146, 202.  Ultimately, the Complaint has not sufficiently pleaded that Lavvan possessed any trade secrets under the DTSA.  Rather, Lavvan's DTSA claim is set forth in conclusory paragraphs lacking factual support, which thus fails to nudge Lavvan's claims from conceivable to plausible.

Lavvan does nothing more than assert conclusory allegations regarding the existence of alleged trade secrets, without sufficiently describing what those trade secrets are, how they are valuable, and how Lavvan has maintained their secrecy.  Such conclusory allegations of the existence of trade secrets routinely leads to dismissal in this district.  *See, e.g., Principia Partners LLC v. Swap Fin. Grp., LLC*,  2019 WL 4688711, at *3 (S.D.N.Y. Sept. 26, 2019) (dismissing DTSA claim where plaintiff failed to set forth particular facts to explain what the "proprietary information" was, and how such "proprietary" and "confidential" information was discernable

from plaintiff's software itself).[4]  Lavvan's DTSA claim simply states that it "is the owner or licensee of valuable trade secrets" and that "[s]uch trade secrets comprise Lavvan's financial, business, scientific, technical, economic and engineering information, including but not limited to, compilations, program devices, formulas, designs, prototypes, methods, techniques, processes, procedures, programs and codes, both tangible and intangible and stored, compiled and memorialized physically, electronically, and graphically."  Compl. ¶ 228.  This description is nothing more than a recitation of the DTSA's definition of a trade secret, *see* 18 U.S.C. § 1839(3).  Lavvan's "formulaic recitation of the elements of a cause of action" is the quintessential example of pleadings that "will not do" under *Iqbal*.  556 U.S. at 678.

Indeed, Lavvan's attempts to define its trade secrets are no more than general, sweeping claims that it shared market information, regulatory and compliance analyses, cannabinoid use approvals, and its commercial manufacturer selection process with Amyris.  Compl. ¶¶ 106–08, 143–46.  These are general categories of information, not trade secrets.  "Alleging the existence of general categories of confidential information, without providing any details to generally define the trade secrets at issue, does not give rise to a plausible allegation of a trade secret's existence." *Elsevier*, 2018 WL 557906, at *6 (citation and internal quotation marks omitted) (rejecting, *inter alia*, "clinical methods," "interpretation of data," "assessments of risk," and "analytics" as trade secrets, finding them to be categories too general to warrant trade secret protection); *see also Universal Processing*, 2018 WL 4684115, at *3 n.1 (ruling that "listing general categories of information is not sufficiently specific to plead the existence of a trade secret").

---

[4]  *See also Lawrence v. NYC Med. Prac., P.C.*, 2019 WL 4194576, at *5 (S.D.N.Y. Sept. 3, 2019) (dismissing DTSA claim where plaintiff failed to define the "contours" of the trade secret); *Universal Processing*, 2018 WL 4684115, at *3 (dismissing DTSA claim upon ruling that complaint lacked facts to allow the court to understand what the proprietary information was and the value and competitive advantage that the alleged trade secret could provide for others).

b.     The Complaint Fails to Allege the Misappropriation of a Trade Secret.

Even if Lavvan had adequately pleaded that it possessed protectable trade secrets, Lavvan's

DTSA claims would still fail because it has also failed to plead that those trade secrets were

misappropriated.  Section 1839 of the DTSA defines misappropriation as the "acquisition of a

trade secret of another by a person who knows or has reason to know that the trade secret was

acquired by improper means[, or] disclosure or use of a trade secret of another without express or

implied consent by a person who . . . used improper means to acquire knowledge of the trade

secret."  *Ad Lightning Inc. v. Clean.io, Inc.*, 2020 WL 4570047, at \*3 (S.D.N.Y. Aug. 7, 2020)

(Oetken, J.) (citing 18 U.S.C. § 1839(5)).  As such, Lavvan must allege that Amyris either acquired

Lavvan's trade secrets through improper means, or disclosed or used properly acquired trade

secrets without authorization.  Lavvan can do neither.

As an initial matter, it appears at least some of the vague set of supposed secrets belong to

Amyris itself; the notion that Amyris improperly acquired its own trade secrets does not pass the

straight face test.  Amyris knows these "trade secrets" (if they are properly labelled as such)

because *it* developed them.  And, to the extent Lavvan is invoking trade secrets it claims to have

developed or otherwise owns—again, it is almost impossible to tell because the descriptions are

so vague—what Lavvan is really saying is that Amyris failed to abide by the RCLA's

confidentiality and other provisions.  *See* Compl. ¶ 231.  Again, as above, this would amount to a

contract claim, not trade secret misappropriation.  But in any event, under the DTSA, improper

means "does not include reverse engineering, independent derivation, or *any other lawful means

of acquisition*."  18 U.S.C. § 1839(6) (emphasis added).  Throughout the Complaint, Lavvan states

that it shared its alleged trade secrets with Amyris *in accordance with* the RCLA.  *See* Compl.

¶¶ 105–06, 108, 225.  As such, Amyris's acquisition of such information was not improper; rather,

it was lawfully obtained pursuant to an agreement negotiated by the parties.  In the end, the

argument that Amyris misused either its own trade secrets or Lavvan's trade secrets lawfully obtained under the RCLA for the development of cannabinoids is purely a contractual dispute, which must be arbitrated rather adjudicated by this Court pursuant to the RCLA.  *See supra*, Section A.3.  There simply is no trade secret dispute here.

Lavvan's pleading failures as to both its patent infringement and trade secret causes of action are total.  Defendants respectfully ask that the Court dismiss Lavvan's complaint in its entirety pursuant to Federal Rule of Civil Procedure 12(b)(6).

## **CONCLUSION**

When this action was filed in this Court, Lavvan issued a press release announcing that it had filed an "$881 million lawsuit."  Given the obvious requirement that these claims be arbitrated and the total failure to sufficiently plead the causes of action asserted, publicity was Lavvan's only real objective.  In that, and that only, has Lavvan succeeded.  It has failed to plead anything that belongs in this Court.  For the reasons set out above, the Court should dismiss this action and compel arbitration of Plaintiff's claims.  Or, in the event that this Court decides to address such issues itself, the Court should simply dismiss Lavvan's Complaint outright for failure to state a claim under Rule 12(b)(6).

Dated: October 2, 2020

Respectfully submitted,


By: ___/s/ Brian A. Rosenthal_____
Brian A. Rosenthal
  brosenthal@gibsondunn.com
Oliver J. Fong
  ofong@gibsondunn.com
Sarah L. Segal (*admission pending*)
  ssegal@gibsondunn.com
Venus Allahyarzadeh
  vallahyarzadeh@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166
Tel.: 212.351.4000 / Fax: 212.351.4035

Michael D. Celio, (*pro hac vice pending*)
  mcelio@gibsondunn.com
H. Mark Lyon, (*pro hac vice pending*)
  mlyon@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
1881 Page Mill Road
Palo Alto, CA 94304-1211
Tel.: 650.849.5300 / Fax: 650.849.5333

Michael B. Carlinsky
  michaelcarlinsky@quinnemanuel.com
Kevin P.B. Johnson
  kevinjohnson@quinnemanuel.com
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, NY 10010
Tel.: 212.849.7000 / Fax: 212.849.7100

*Attorneys for Defendant Amyris, Inc.*