UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

LAVVAN, INC.,

Plaintiff,

-against-

AMYRIS, INC.,

Defendant.

---

No. 20-cv-07386 (JPO)

<u>Oral Argument Requested</u>

**REPLY IN SUPPORT OF**
**DEFENDANT AMYRIS, INC.'S MOTION TO COMPEL ARBITRATION AND**
**MOTION TO DISMISS**

## TABLE OF CONTENTS

Page

INTRODUCTION ....................................................................................................... 1

ARGUMENT ............................................................................................................... 2

    A.    Amyris's Motion To Compel Arbitration Should Be Granted ............................ 2

        1.    The Parties Intended Questions of Arbitrability to be Resolved by the Arbitrator ....................................................................................... 3

        2.    Lavvan's Claims Are Not "Intellectual Property" Claims Under the RCLA ........................................................................................................ 4

    B.    Lavvan's Claims Fail Under Rule 12(b)(6) ...................................................... 6

        1.    Lavvan's Patent Claims Are Improper. ................................................... 6

        2.    Lavvan Fails to Adequately Plead a Plausible Claim of Trade Secret Misappropriation ........................................................................... 8

CONCLUSION ........................................................................................................... 10

# TABLE OF AUTHORITIES

Page(s)

## Cases

*Alexander Interactive, Inc. v. Leisure Pro Ltd.*,
   2014 WL 4651942 (S.D.N.Y. Sept. 16, 2014)...................................................................8

*In re Arbitration Between Gen. Sec. Nat. Ins. Co. & AequiCap Program Adm'rs*,
   785 F. Supp. 2d 411 (S.D.N.Y. 2011).............................................................................3

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 554 (2007).........................................................................................................6

*Big Vision Private Ltd. v. E.I. DuPont De Nemours & Co.*,
   1 F. Supp. 3d 224 (S.D.N.Y. 2014), *aff'd sub nom. Big Vision Private Ltd. v.
   E.I. du Pont de Nemours & Co.*, 610 F. App'x 69 (2d Cir. 2015)..............................8

*Collins & Aikman Prod. Co. v. Bldg. Sys., Inc.*,
   58 F.3d 16 (2d Cir. 1995)............................................................................................4, 6

*Elsevier Inc. v. Doctor Evidence, LLC*,
   2018 WL 557906 (S.D.N.Y. Jan. 23, 2018) ...................................................................9

*Energy Intelligence Grp., Inc. v. Jefferies, LLC*,
   101 F. Supp. 3d 332 (S.D.N.Y. 2015)..........................................................................6, 7

*ExpertConnect, L.L.C. v. Fowler*,
   2019 WL 3004161 (S.D.N.Y. July 10, 2019) ...............................................................10

*Faively Transport Malmo AB v. Wabtec Corp.*,
   559 F.3d 110 (2d Cir. 2009)............................................................................................8

*Hochroth v. William Penn Life Ins. Co.*,
   2003 WL 22990105 (S.D.N.Y. Dec. 19, 2003) ..............................................................4

*Iacovacci v. Brevet Holdings, LLC*,
   437 F. Supp. 3d 367 (S.D.N.Y. 2020).........................................................................10

*Island Intell. Prop., LLC v. StoneCastle Asset Mgmt. LLC*,
   2020 WL 2793000 (S.D.N.Y. May 29, 2020) ................................................................8

*Ji Dong Cheng v. HSBC Bank USA, N.A.*,
   2020 WL 3165214 (E.D.N.Y. June 15, 2020) ................................................................4

*Koninklijke Philips Electronics N.V. v. The ADS Grp.*,
   694 F. Supp.2d 246 (S.D.N.Y. 2010).............................................................................6

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*Kraus USA, Inc. v. Magarik*,
    2020 WL 2415670 (S.D.N.Y. May 12, 2020) .........................................................................10

*Lawrence v. NYC Med. Prac., P.C.*,
    2019 WL 4194576 (S.D.N.Y. Sept. 3, 2019).............................................................................9

*Lefkowitz v. McGraw-Hill Global Educ. Holdings, LLC*,
    23 F. Supp. 3d 344 (S.D.N.Y. 2014).........................................................................................6

*Medidata Sols., Inc. v. Veeva Systems Inc.*,
    2018 WL 6173349 (S.D.N.Y. Nov. 26, 2018)........................................................................10

*N. Star Innovations, Inc. v. Micron Tech., Inc.*,
    2017 WL 5501489 (D. Del. Nov. 16, 2017) ............................................................................7

*Prowire LLC v. Apple, Inc.*,
    2017 WL 3444689 (D. Del. Aug. 9, 2017) ...............................................................................7

*Shaw Grp. Inc. v. Triplefine Int'l Corp.*,
    322 F.3d 115 (2d Cir. 2003)..................................................................................................3, 4

*Sportvision, Inc. v. MLB Advanced Media, LP*,
    2020 WL 1957450 (S.D.N.Y. Apr. 23, 2020).........................................................................3

*Symphony Fabrics Corp. v. Knapel*,
    2008 WL 2332333 (S.D.N.Y. June 2, 2008) ...........................................................................5

*Trahan v. Lazar*,
    457 F. Supp. 3d 323 (S.D.N.Y. 2020).......................................................................................5

*Universal Processing LLC v. Weile Zhuang*,
    2018 WL 4684115 (S.D.N.Y. Sept. 28, 2018).........................................................................9

*Zirvi v. Flatley*,
    433 F. Supp. 3d 448 (S.D.N.Y. 2020)................................................................................9, 10

**Statutes**

18 U.S.C. § 1839(6) ..........................................................................................................................5

**Other Authorities**

David Q. Quinto et al., Trade Secrets: Law and Practice § 2.05[2][a][iii] (2019) ..........................5

**TABLE OF AUTHORITIES**
(continued)

Page(s)

**Rules**

Fed. R. Civ. P. 15(a)(1)...................................................................................................................10

**INTRODUCTION**

Plaintiff Lavvan's Opposition, unintentionally—but eloquently—makes clear why this matter needs to be submitted to arbitration. █████████████████████████████████

████████████████████████████████████████████████████████████████████

██████████ In opposing Amyris's Motion to Dismiss, Lavvan argues that the contract (the "RCLA") between the parties grants it the right to exclude Amyris from producing cannabinoids, and that therefore, any attempt to do so by Amyris must be patent infringement and trade secret misappropriation. ████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

███████████████████ Those admissions by themselves are sufficient to resolve this motion. Lavvan's position would require the resolution of the exact same issues by two tribunals at the same time. There is no logical reason to go down the road Lavvan suggests.

Nor, more importantly, is there any legal reason to do so. The parties agreed that their disputes would be arbitrated, and adopted the Rules of the International Chamber of Commerce ("ICC"), which direct all issues of arbitrability to the arbitrator. As Amyris explained in its opening brief, there is a narrow exception to the arbitration agreement for intellectual property claims. ████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████ If Lavvan's contractual arguments are wrong (they are) its purported patent claims are frivolous.

Lavvan's entire opposition can be boiled down to one argument: these claims are intellectual property claims because Lavvan says they are. Opp. at 7. ██████████████████

███████████████████████████████████████████████; because the causes of action are titled "patent infringement" and "trade secret misappropriation," this Court must hear them.

1

But that is just not so.  Rather, it is the ICC that, by agreement, is empowered to decide if these are truly "intellectual property" claims as that term is used in the parties' agreement.

Finally, even if the Court decides this dispute itself, the claims lack the legally required specificity by obliquely listing 20 patents and asserting that Amyris infringes "some or all of them."  Lavvan's argument is, in effect, "Amyris ought to know what it did."  But that is not how it works; Lavvan's burden is to explain which claims of which patents Amyris is supposedly violating, and what trade secrets Amyris allegedly misappropriated.  It has not done so.  Lavvan's abject failure to even attempt to satisfy the pleading standards further supports the conclusion that these are not, in fact, good-faith intellectual property claims at all.

There was no reason that these issues could not have been raised in the existing arbitration; this Court should send them back there where they belong.

## ARGUMENT

### A.    Amyris's Motion To Compel Arbitration Should Be Granted

This motion is straightforward.  Lavvan's claims against Amyris are subject to a broad arbitration provision that requires Lavvan to arbitrate its claims in the ICC.  Lavvan, as the party opposing arbitration, bears the burden of persuasion on this motion.  It has not carried that burden. Its sole argument is that these are intellectual property claims, and thus subject to an exception stating such complaints may be filed in court.  But this argument avoids two key questions: (1) what makes something an "intellectual property" dispute, and (2) who decides?  Lavvan's response in both cases is that Lavvan, and Lavvan alone, gets to decide these issues.  Lavvan is wrong.  The parties agreed that the ICC would make the determination regarding what is arbitrable.  And even if the Court were to decide the matter, the law is clear that a party's labels are not binding.  The *substance* controls, and here the claims are contractual in nature because if Amyris prevails on those claims, no good faith intellectual property claims can possibly be brought.

1.    <u>The Parties Intended Questions of Arbitrability to be Resolved by the Arbitrator.</u>

As explained in Amyris's opening brief, Lavvan's claims must be sent to arbitration pursuant to the ICC Rules adopted by the two parties.  Br. at 7-9.  Here, the agreed-upon arbitration clause is broad:  the RCLA's arbitration clause, Section 7.1.1, expressly applies to "all disputes" regarding Amyris's responsibilities, with a specific exception for certain intellectual property disputes.  *See* Compl. Ex. A §§ 1.94, 1.96, 3.2.1, 3.2.4, 7.1.1.  In cases involving broad arbitration clauses, the parties' adoption of the ICC Rules constitutes "clear and unmistakable evidence" of their intent to arbitrate arbitrability.  *See, e.g.*, *Shaw Grp. Inc. v. Triplefine Int'l Corp.*, 322 F.3d 115, 121-22 (2d Cir. 2003).

Lavvan's response is that the intellectual property carve-out transforms the RCLA's arbitration clause into a narrow one; this, it claims, permits Lavvan to escape the presumption that the parties agreed to submit questions about the scope of arbitration to the arbitrator.  Opp. at 5. Lavvan misstates the legal test for determining what constitutes a broad provision; it is not the case that *any* exception renders an arbitration provision narrow.  Instead, the relevant question is whether the provision defaults to arbitration or instead only applies to specific claims.  *See In re Arbitration Between Gen. Sec. Nat. Ins. Co. & AequiCap Program Adm'rs*, 785 F. Supp. 2d 411, 418 (S.D.N.Y. 2011) ("As a threshold matter, arbitration provisions that specify that 'any disputes' shall be determined by arbitration are typically deemed to be 'broad' arbitration provisions.").  The RCLA defaults to arbitration exempting only one specific subset of disputes.  This is, by definition, a "broad" arbitration provision.  Narrow provisions, by contrast, are ones that designate only specific disputes as subject to arbitration.  *See, e.g.*, *Sportvision, Inc. v. MLB Advanced Media, LP*, 2020 WL 1957450, at *5 (S.D.N.Y. Apr. 23, 2020) ("The narrow arbitration clause here refers to certain subsets of covered disputes. . . . The parties' use of precise language in the arbitration clause suggests an intent to limit arbitration to a particular subset of disputes." (internal quotation

marks omitted)).  Indeed, the cases on which Lavvan relies makes this point clearly.  In *Ji Dong Cheng v. HSBC Bank USA, N.A.*, 2020 WL 3165214, at *3 (E.D.N.Y. June 15, 2020), the arbitral clause applied only to a very specific subset of disputes; arbitration was the exception, not the rule. Here arbitration is the rule.  Indeed, Lavvan concedes that the "RCL Agreement commits most disputes to arbitration."  Opp. at 6.  The arbitration provision in the RCLA is "broad."

And because the arbitration clause here is broad, by agreeing to arbitrate under ICC Rules, the parties intentionally incorporated the specific rule submitting questions of arbitrability to the arbitrator.  *Shaw Grp. Inc.*, 322 F.3d at 122.  That, by itself, resolves this motion.  This matter should be referred to arbitration.

2.   Lavvan's Claims Are Not "Intellectual Property" Claims Under the RCLA.

Even if the Court were to determine the issue of arbitrability itself, Lavvan's claims plead conduct not covered by the exception for good-faith intellectual property disputes.  ████████████

████████████████████████████████████████████████████

████████████████████████████████  This list of patents, it argues, is enough to make it an intellectual property claim under the RCLA.  In essence, Lavvan's argument is that these are intellectual property claims because a plaintiff "may characterize his causes of action as he pleases."  Opp. at 7.  But such characterizations mean nothing for the Court's analysis.[1]  *See Collins & Aikman Prod. Co. v. Bldg. Sys., Inc.*, 58 F.3d 16, 20-21 (2d Cir. 1995) (whether a particular claim falls within scope of arbitration agreement, the court's "analysis is not controlled by the characterization of [the claims] in the pleading").  Courts "look to the conduct alleged and determine whether or not that conduct is within the reach of the [] arbitration clause."  *Id.* at *20.

---

[1]   *Hochroth v. William Penn Life Ins. Co.*, 2003 WL 22990105 (S.D.N.Y. Dec. 19, 2003), which Lavvan cites in support, Opp. at 7, is inapposite—it only concerns precluding the dismissal of a claim for failing to adequately plead fraud when the claim is plead as a breach of contract.  *Id.* at *1.

To put it bluntly:  Lavvan's characterization of its claims is irrelevant—what matters is the substance.  Here, the substance of its claims is plainly contractual.

To be clear, Amyris is not arguing that *good-faith* claims alleging patent infringement or trade secret misappropriation are not intellectual property claims.  Of course they are.  But here Lavvan's allegations hinge entirely on an interpretation of permissible use pursuant to *a contractual arrangement* between the Parties—or stated simply, "who has the right to use what" under the RCLA.  *See* Opp. at 12 ("Lavvan further alleges that the patents are encompassed *by Lavvan's license* to all Amyris IP" (emphasis added)); *id.* at 18; *id*. at 21-22 ("Amyris improperly misappropriated the trade secrets . . . *in violation of the parties' partnership under the RCL Agreement*." (emphasis added)).  If Lavvan cannot show that Amyris's use (if there was any) was unlawful, Lavvan's intellectual property claims become entirely moot.  For example, if an arbitrator determines that the trade secrets were lawfully obtained pursuant to the RCLA, Lavvan's misappropriation claim fails under the Defend Trade Secrets Act ("DTSA").  *See* Br. at 19-20; *see also* 18 U.S.C. § 1839(6) ("improper means . . . does not include reverse engineering, independent derivation, or any other lawful means of acquisition.").[2]  The question of whether Lavvan owns those trade secret and patent rights is a contractual one and falls squarely within the RCLA's arbitration clause.  *See Symphony Fabrics Corp. v. Knapel*, 2008 WL 2332333, at *6 (S.D.N.Y. June 2, 2008) (dismissing complaint where "despite [Plaintiff's] attempt to characterize this action as an employment dispute," Plaintiff's allegations required the resolution of issues that were

---

[2] Lavvan's own sources acknowledge that a contract may lead to dismissal of the trade secret claim.  *See* David Q. Quinto et al., Trade Secrets: Law and Practice § 2.05[2][a][iii] (2019) ("[T]he existence of a contract giving the defendant an arguable right to make use of certain technology may lead to dismissal of the trade secret misappropriation claim on the basis that any trade secret was not acquired through wrongful means"); *see also Trahan v. Lazar*, 457 F. Supp. 3d 323, 355 (S.D.N.Y. 2020) ("When a valid agreement governs the subject matter of a dispute between parties, claims arising from that dispute are contractual; attempts to repackage them as sounding in fraud, conversion, and other torts, are generally precluded, unless based on a duty independent of the contract." (citations omitted)).

"precisely the kind of question that the Agreement refers to arbitration"). ██████████

████████████████████████████████  At this point, this is nothing more than a contract

claim that must be arbitrated.  *Collins*, 58 F.3d at 20-21 (where the "allegations underlying the

claims 'touch matters' covered by the parties' . . . agreements, then those claims must be

arbitrated, whatever the legal labels attached to them" (citation omitted)).

**B.      Lavvan's Claims Fail Under Rule 12(b)(6)**

If the Court determines that it should adjudicate this dispute itself, it should dismiss the

action.   As Amyris explained in its opening brief, Lavvan's complaint consists solely of

conclusory, threadbare allegations that cannot survive a motion to dismiss.  *See* Br. at 12-16; *see*

*also*, *Koninklijke Philips Electronics N.V. v. The ADS Grp.*, 694 F. Supp.2d 246, 251 (S.D.N.Y.

2010) ("[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more

than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not

do.") (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007*)*).   Lavvan's own cases

expressly state that "[c]onclusory statements [in a complaint] are not entitled to the assumption of

truth." *Energy Intelligence Grp., Inc. v. Jefferies, LLC*, 101 F. Supp. 3d 332, 338 (S.D.N.Y. 2015).

1.      <u>Lavvan's Patent Claims Are Improper.</u>

Lavvan's Opposition takes no issue with the actual patent pleading standards.  *See* Br. at

13.  Instead, Lavvan attempts to circumvent those requirements by suggesting that Amyris has

existing knowledge from which Amyris should be required to make educated guesses and

assumptions to bridge the pleading gaps in Lavvan's Complaint.  *See* Opp. at 13.  This is the legal

equivalent of "you should know what you did."  Unsurprisingly, Lavvan provides no case support

for this novel pleading standard.  Instead, Lavvan relies solely on copyright (*not* patent) cases

where plaintiffs' complaints included detailed factual allegations far beyond anything Lavvan

provided in its Complaint.  *See, e.g.*, *Lefkowitz v. McGraw-Hill Global Educ. Holdings, LLC*, 23

F. Supp. 3d 344, 352-54 (S.D.N.Y. 2014) (copyright claim sufficiently pled via detailed description of a "pattern of infringement" supported by chart of 294 examples); *Energy*, 101 F. Supp. 3d at 340 (copyright claim sufficiently plead via detailed facts of "usage pattern [] indicative of unauthorized activity."). These cases pled specific detailed patterns of misconduct and identified the alleged infringement that occurred. Lavvan's Complaint, by contrast, makes no attempt to plead *any* facts concerning Amyris's alleged practices, nor any attempt to plead a factual connection between such practices and any *claims* of the asserted patents. Without such allegations, the Complaint fails to provide basic notice as to patent infringement. *See, e.g.*, *Prowire LLC v. Apple, Inc.*, 2017 WL 3444689, at *5 n.33 (D. Del. Aug. 9, 2017) (the "court's concern [is] that [the] complaint 'give[s] the defendant fair notice of what the . . . claim is and the grounds upon which it rests'" (quotation omitted)).

It is difficult to overstate how far short of the standard Lavvan's Complaint falls. As explained in Amyris's opening brief, it would not suffice had Lavvan just parroted the patent claim language in the Complaint when describing the allegedly infringing activity. *See* Br. at 14; *see also*, *e.g.*, *N. Star Innovations, Inc. v. Micron Tech., Inc.*, 2017 WL 5501489, at *2 (D. Del. Nov. 16, 2017). But Lavvan's Complaint does not even rise to the level of parroting claim language; it fails to even *mention* a single claim much less discuss the claim language. Lavvan merely provides a brief, non-technical summary of each patent and then asserts that Amyris infringes "some or all of the Patents." *See* Compl. ¶¶ 243-44. There are no factual allegations as to exactly which patent is the subject of its claims, which claims in any of those patents might have been infringed, or even which product, service, or activity of Amyris might give rise to any alleged infringement. While Lavvan asserts that it has "considerable knowledge regarding the process by which cannabinoids are developed and manufactured," Opp. at 12, there is absolutely no elaboration or factual support in the Complaint for how or why Amyris must have used any of the Patents "to develop,

manufacture, and commercialize cannabinoids in the Lavvan Field."  *See, e.g.*, Compl. ¶ 242.

Lavvan's Complaint thus fails to meet the minimum pleading standard required by this Circuit and

*Iqbal*, *Twombly*, and their progeny.

  2.  Lavvan Fails to Adequately Plead a Plausible Claim of Trade Secret
      Misappropriation.

  Lavvan has not adequately pled trade secret misappropriation under the DTSA, and

Lavvan's Opposition does nothing but highlight the claim's fatal flaws.  As Amyris sets forth in

its Opening Brief—and as Lavvan does not dispute—Lavvan must first adequately plead that it

owns a valid trade secret for its DTSA claim to survive.  Br. at 15-16; *see also Faively Transport*

*Malmo AB v. Wabtec Corp.*, 559 F.3d 110, 117 (2d Cir. 2009).  Lavvan has failed to do so.  This

is because a DTSA plaintiff must "put forth *specific* allegations as to the information owned" for

the "simple reason that a defendant must know what constitutes a plaintiff's trade secret" to

adequately defend itself.  Br. at 16 (emphasis added); *Big Vision Private Ltd. v. E.I. DuPont De*

*Nemours & Co.*, 1 F. Supp. 3d 224, 257 (S.D.N.Y. 2014), *aff'd sub nom. Big Vision Private Ltd.*

*v. E.I. du Pont de Nemours & Co.*, 610 F. App'x 69 (2d Cir. 2015); *see also Island Intell. Prop.,*

*LLC v. StoneCastle Asset Mgmt. LLC*, 2020 WL 2793000, at *7 (S.D.N.Y. May 29, 2020) ("[T]he

pleadings must give the opposing party fair notice of what the plaintiff's claim is—including, in

at least some identifying detail, the trade secret it is alleged to have misappropriated." (citations

and internal quotation marks omitted)); *Alexander Interactive, Inc. v. Leisure Pro Ltd.*, 2014 WL

4651942, at *5 (S.D.N.Y. Sept. 16, 2014) ("A plaintiff must plead facts with sufficient particularity

to provide defendants 'fair notice of what the claim is and the grounds upon which it rests.'"

(citation omitted)).  In its Complaint, Lavvan falls far short of providing Amyris and the Court

with enough information to adequately discern the boundaries of the alleged trade secrets at issue.

*See* Br. at 18 n.4 (DTSA claim dismissed where plaintiff failed to define the "contours" of the

trade secret).  Instead, Lavvan's allegations are vague and open-ended.  For example, Lavvan alleges that it "developed, and shared, *several* trade secrets with Amyris," but provides scant details as to what these "several" trade secrets are.  Compl. ¶ 105 (emphasis added).  Instead, Lavvan broadly alleges that it shared "key market information about *various* cannabinoid opportunities, *including* cannabinoid-by-cannabinoid commercialization and regulatory analyses"; that it "collected, reviewed, and synthesized *various* public studies and regulatory findings"; and that "[*t*]*hese* trade secrets are not generally known, and are the result of proprietary market research and analysis in a new market."  Compl. ¶¶ 106-07 (emphases added).  This is not enough.  *See Elsevier Inc. v. Doctor Evidence, LLC*, 2018 WL 557906, at *5 (S.D.N.Y. Jan. 23, 2018) (claims must be "sufficient to raise a right to relief above the speculative level" (citations omitted)).  With such generalized descriptions, Amyris—and the Court—must guess what the trade secrets are, and what information is truly secret.  *See Zirvi v. Flatley*, 433 F. Supp. 3d 448, 465 (S.D.N.Y. 2020) (DTSA claims must be pleaded with "'sufficient particularity' in order to apprise the defendants and the Court what information contained in the alleged [] trade secrets is truly secret and what information is not." (citation omitted)); *see also Universal Processing LLC v. Weile Zhuang*, 2018 WL 4684115, at *3 (S.D.N.Y. Sept. 28, 2018) (dismissing because plaintiff's pleading "does not include factual allegations from which the [c]ourt can understand what the [trade secret] is and the basis of Plaintiff's contention that it is a trade secret within the meaning of the DTSA").

In other words, Lavvan has failed to define the "contours" of its alleged trade secrets within the confines of a DTSA claim.  *See Lawrence v. NYC Med. Prac., P.C.*, 2019 WL 4194576, at *4-5 (S.D.N.Y. Sept. 3, 2019).[3]  Putting aside Lavvan's self-serving rhetoric regarding its alleged

---

[3]  Lavvan's Opposition attempts to repackage the Complaint's trade secret allegations.  Lavvan had a right to amend its pleadings to define the scope of its alleged trade secrets with more specificity, but it did not and instead chose to litigate on its initial Complaint.  *See* Fed. R. Civ. P. 15(a)(1).  It should not be rewarded for doing so. Its attempt to expand on its alleged trade secrets in its Opposition should be rejected.

"expertise" and "'highly sought-after' executives and scientists," Opp. at 16-17, Lavvan ultimately reduces its trade secrets to two broad categories:  (i) "regulatory and business analysis to identify 'the best products and best markets to target for commercialization,'" and (ii) "'information about the selection process and criteria' for engaging a commercial manufacturer[.]" *Id*. at 17.  However, these are general categories of information, not specific trade secrets, and thus warrant dismissal. *See* Br. at 18; *see also Zirvi*, 433 F. Supp. 3d at 465 (dismissing trade secret claims because they "resemble . . . broad categories of information and are vague, which, by itself, constitutes a reason to dismiss the claims" (citation and internal quotation marks omitted)).  Even the cases Lavvan cites recognize that considerable specificity is necessary for a DTSA claim to survive.  *See Iacovacci v. Brevet Holdings, LLC*, 437 F. Supp. 3d 367, 380 (S.D.N.Y. 2020) ("[D]istrict courts in this circuit routinely require that plaintiffs plead their trade secrets with sufficient specificity to inform the defendants of what they are alleged to have misappropriated.").[4]

Finally, even if Lavvan had sufficiently pled the existence of its trade secret, Lavvan would need to adequately plead misappropriation for its DTSA claim to survive.  Br. at 19-20.  Lavvan cannot do so at this juncture because any alleged improper use—of either its own alleged trade secrets *or* those developed by Amyris—is an issue of contract interpretation.  *See supra* Section A.2.  For the foregoing reasons, Lavvan's DTSA claim must be dismissed.

## CONCLUSION

For the reasons set forth above and in its opening brief, Amyris respectfully requests that the Court dismiss Lavvan's claims and compel them to arbitration.

---

[4] *See also Medidata Sols., Inc. v. Veeva Systems Inc.*, 2018 WL 6173349, at *3 (S.D.N.Y. Nov. 26, 2018) (upholding complaint because "[i]t specifies *numerous specific* categories of information relating to its software, marketing and business plans" (emphasis added)); *ExpertConnect, L.L.C. v. Fowle*r, 2019 WL 3004161, at *4 (S.D.N.Y. July 10, 2019) (same); *Kraus USA, Inc. v. Magarik*, 2020 WL 2415670, at *5 (S.D.N.Y. May 12, 2020) (dismissal denied because plaintiff alleged "several *specific* categories" of trade secrets (emphasis added)).

Dated: November 13, 2020                    Respectfully submitted,


                                            By:   */s/ Brian A. Rosenthal*
                                            Brian A. Rosenthal
                                                brosenthal@gibsondunn.com
                                            Oliver J. Fong
                                                ofong@gibsondunn.com
                                            Sarah L. Segal
                                                ssegal@gibsondunn.com
                                            Venus Allahyarzadeh
                                                vallahyarzadeh@gibsondunn.com
                                            GIBSON, DUNN & CRUTCHER LLP
                                            200 Park Avenue
                                            New York, NY 10166
                                            Tel.: 212.351.4000 / Fax: 212.351.4035

                                            Michael D. Celio, *pro hac vice*
                                                mcelio@gibsondunn.com
                                            H. Mark Lyon, *pro hac vice*
                                                mlyon@gibsondunn.com
                                            GIBSON, DUNN & CRUTCHER LLP
                                            1881 Page Mill Road
                                            Palo Alto, CA 94304-1211
                                            Tel.: 650.849.5300 / Fax: 650.849.5333

                                            Michael B. Carlinsky
                                                michaelcarlinsky@quinnemanuel.com
                                            Kevin P.B. Johnson
                                                kevinjohnson@quinnemanuel.com
                                            QUINN EMANUEL URQUHART &
                                            SULLIVAN, LLP
                                            51 Madison Avenue, 22nd Floor
                                            New York, NY 10010
                                            Tel.: 212.849.7000 / Fax: 212.849.7100

                                            *Attorneys for Defendant Amyris, Inc.*