UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

LAVVAN, INC.,

                       Plaintiff,

         -v-

AMYRIS, INC.,

                       Defendant.

20-CV-7386 (JPO)

OPINION AND ORDER

---

J. PAUL OETKEN, District Judge:

      Plaintiff Lavvan, Inc. filed this suit against Defendant Amyris, Inc., alleging trade secret misappropriation and patent infringement. (*See* Dkt. No. 2 ("Compl.").) Amyris moves to compel arbitration between the companies as it contends is required by the parties' agreement, or in the alternative to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure. (Dkt. No. 13.) For the reasons that follow, Amyris's motion is denied.

**I.   Background**

      The following facts are taken from the operative complaint and are presumed true for the purposes of this motion.

      Lavvan is a corporation with the goal to "commercialize high-quality cannabinoid ingredients" for a host of industries. (Compl. ¶ 26.) Amyris is a biotechnology company that produces, *inter alia*, ingredients for cosmetics, flavors, and fragrances. (Compl. ¶ 27.) The companies began exploring the potential of working together to produce synthetic cannabinoids in late 2018. (Compl. ¶ 42.) Amyris was to provide its expertise in fermentation and related molecular technologies, with Lavvan handling manufacturing and commercialization. (Compl. ¶¶ 43, 47.)

1

In March 2019 the parties executed the Research, Collaboration, and License Agreement ("RCLA"), which granted Lavvan an "exclusive" license to Amyris's intellectual property regarding the research, development, manufacture, and commercialization of cannabinoids. (Compl. ¶ 57; RCLA § 5.6; *see also* RCLA §§ 1.5, 1.7, 1.118.[1]) The license was exclusive "even as to Amyris" excepting that Amyris could use such intellectual property as necessary to perform under the RCLA. (RCLA § 5.6.)

The RCLA also provided:

> All disputes that cannot be resolved by the management of both Parties pursuant to Section 3.2.4 will be finally settled under the Rules of Arbitration of the International Chamber of Commerce (the "ICC Rules") by an arbitration tribunal appointed in accordance with the said ICC Rules as modified hereby, and judgment upon the award rendered may be entered in any court having jurisdiction thereof. The decision of the arbitrator as to any claim or dispute shall be final, binding, and conclusive upon the Parties.

(RCLA § 7.1.1.) Finally, it provided:

> In the event that a dispute arises with respect to the scope, ownership, validity, enforceability, revocation or infringement of any Intellectual Property, and such dispute cannot be resolved by the management of both Parties in accordance with Section 3.2.4., unless otherwise agreed by the Parties in writing, such dispute will not be submitted to arbitration and either Party may initiate litigation solely in a court or other tribunal of competent jurisdiction in the country of issuance, registration, application or other protection, as applicable, of the item of Intellectual Property that is the subject of the dispute.

(RCLA § 7.1.2.)

After Lavvan and Amyris's partnership faced challenges, Amyris's COO announced on August 6, 2020 that Amyris would begin fermenting a cannabinoid within two weeks. (Compl.

---

[1] The complaint in this case was originally filed under seal and the RCLA was included as an attachment to the complaint. While a redacted version of the complaint was filed on the docket, the parties have not filed any version of the RCLA. The parties have emailed an unredacted version of both the complaint and the RCLA to the Court, and the Court will provide all relevant RCLA provisions.

¶ 206.) Lavvan took this statement to mean that Amyris was referring to cannabinoid products originally identified by Lavvan using intellectual property licensed exclusively to Lavvan, in violation of the RCLA. (Compl. ¶ 211.) Lavvan filed a request for arbitration with the International Chamber of Commerce on August 22, 2020 (*see* Dkt. No. 18-1) and filed the present suit on September 10, 2020 (*see* Compl.).

## II.     Legal Standards

"The FAA 'requires courts to enforce privately negotiated agreements to arbitrate . . . in accordance with their terms.'" *Nat'l Union Fire Ins. Co. of Pittsburg v. Beelman Truck Co.*, No. 15 Civ. 8799, 2016 WL 4524510, at *2 (S.D.N.Y. Aug. 24, 2016) (alteration in original) (quoting *Volt Info. Scis., Inc. v. Bd. of Tr. of Leland Stanford Junior Univ.*, 489 U.S. 468, 478 (1989)). The court's evaluation is limited to: "i) whether a valid agreement or obligation to arbitrate exists, and ii) whether one party to the agreement has failed, neglected or refused to arbitrate." *LAIF X SPRL v. Axtel, S.A. de C.V.*, 390 F.3d 194, 198 (2d Cir. 2004). Where these requirements are met, the court must issue "an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." 9 U.S.C. § 4. These "threshold question[s]" of arbitrability are generally answered by applying state contract law. *Nicosia v. Amazon.com*, 834 F.3d 220, 229 (2d Cir. 2016).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In considering the motion to dismiss, the Court "must accept as true all of the factual allegations contained in the complaint." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 508 n.1 (2002). And while "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory

statements, do not suffice," *Iqbal*, 556 U.S. at 678, the Court must draw "all inferences in the light most favorable to the nonmoving party[ ]," *In re NYSE Specialists Sec. Litig.*, 503 F.3d 89, 95 (2d Cir. 2007).

**III.    Discussion**

Amyris moves to compel arbitration as per the RCLA, or, alternatively, to dismiss under Federal Rule of Civil Procedure 12(b)(6).  The Court addresses each point in turn.

    **A.    Motion to Compel Arbitration**

Amyris argues that the RCLA requires this case to be arbitrated for essentially two reasons: (1) any questions about arbitrability must be resolved by an arbitrator; and (2) regardless, Lavvan's claims are "mischaracterized" as intellectual property claims and thus fall within the ambit of the arbitration requirement.  (Dkt. No. 35 at 4.)

"[T]he issue of arbitrability may only be referred to the arbitrator if there is *clear and unmistakable evidence* from the arbitration agreement, as construed by the relevant state law, that the parties intended that the question of arbitrability shall be decided by the arbitrator." *Bell v. Cendant Corp.*, 293 F.3d 563, 566 (2d Cir. 2002) (emphasis in original) (internal quotation marks removed) (quoting *PaineWebber Inc. v. Bybyk*, 81 F.3d at 1198–99 (2d Cir. 1996) (quoting *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995))).  There is clear and unmistakable evidence here, but in the other direction:  The RCLA explicitly carves out intellectual property disputes from arbitration, requiring that any "such dispute will not be submitted to arbitration and either Party may initiate litigation solely in a court . . . ."  (RCLA § 7.1.2.)  The RCLA, in other words, demonstrates that the parties explicitly agreed that intellectual property disputes would be determined by a court.  Requiring the parties to arbitrate this question would ignore the clear language of the parties' agreement.

Amyris's second contention, that Lavvan's causes of action are not "good-faith" intellectual property claims but instead disguised contract claims, initially seems more promising. (Dkt. No. 35 at 4–5.) In support, Amyris points out that Lavvan's complaint in this action and its request for arbitration, where Lavvan sues on a number of contract claims, are very similar. (Dkt. No. 17 at 10.) Amyris also argues that Lavvan has failed to meet the pleading requirements for the intellectual property claims it asserts in this action and that resolution of such claims necessarily requires contractual analysis of the RCLA.

Amyris is correct that, in deciding whether Lavvan's contentions are intellectual property claims, this Court's "analysis is not controlled by the characterization [of such claims] in the pleading." *Collins & Aikman Products Co. v. Building Systems, Inc.*, 58 F.3d 16, 20 (2d Cir. 1995). Instead, the analysis should "focus on the allegations in the complaints rather than the legal causes of action asserted." *Id*. (citation omitted). However, as detailed *infra*, Lavvan has sufficiently supported both its trade secrets and patent infringement claims. Intellectual property and contractual issues are regularly intertwined; the mere fact that an intellectual property claim may involve contractual analysis is insufficient to strip the "intellectual property" label for purposes of this motion.

By the clear dictates of the RCLA, the parties must litigate, not arbitrate, intellectual property disputes. Because Lavvan has set forth two intellectual property claims, Amyris's motion to compel arbitration is denied.

B.  **Motion to Dismiss**

1.  **Trade Secret Misappropriation**

To state a claim for misappropriation under the Defend Trade Secrets Act (DTSA), a plaintiff must allege that (1) it owned a trade secret that (2) the defendant misappropriated. 18 U.S.C. § 1836(b)(1).

a.  **Whether Lavvan Owned a Trade Secret**

In determining whether information qualifies as a trade secret, New York courts consider: (1) the extent to which the information is known outside the business; (2) the extent to which it is known by employees and others involved in the business; (3) the extent of measures taken to guard the secrecy of the information; (4) the value of the information to the business and its competitors; (5) the amount of effort or money expended in developing the information; (6) the ease or difficulty with which the information could be properly acquired or duplicated by others. *Integrated Cash Mgmt. Servs., Inc. v. Digital Transactions, Inc.*, 920 F.2d 171, 173 (2d Cir. 1990) (citation omitted).[2] "These factors are guideposts, not elements, and it is not necessary to plead every single factor to state a claim, and the most important consideration is whether the information is actually a secret." *LivePerson, Inc. v. 24/7 Customer, Inc.*, 83 F. Supp. 3d 501, 514 (S.D.N.Y. 2015) (internal quotation marks and citation omitted).

Lavvan alleges it possessed trade secrets including "specialized knowledge of market opportunities and regulatory requirements for various cannabinoids" derived from its market research and "analyses detailing the strengths of weaknesses of various manufacturers." (Compl. ¶¶ 105–09, 143–46, 228.)  To develop this knowledge, Lavvan hired a "seasoned team of world-

---

[2] The elements of a trade secret misappropriation claim under the DTSA and under New York state law are "fundamentally the same." *Iacovacci v. Brevet Holdings, LLC*, 437 F. Supp. 3d 367, 380 (S.D.N.Y. 2020).

class professionals with extensive expertise in the cannabis space" who were "highly sought-after" in the industry. (Compl. ¶ 87.) These alleged trade secrets, Lavvan explains, would "enable faster time to market" and, thus, greater market share. (Dkt. No. 29 at 17; Compl. ¶ 41.) Lavvan took steps to protect such information, including amending the RCLA to impose penalties for unauthorized public statements, requiring encryption and non-disclosure agreements, and segregating sensitive files from general employees' access. (Compl. ¶¶ 117, 203–05.) Lavvan also contends that Amyris misused the trade secrets it licensed exclusively to Lavvan. (Compl. ¶ 216.) On these alleged facts alone, Lavvan would seem to satisfy the requisite factors. Amyris contends, however, that Lavvan's description of its trade secrets is too general to survive a motion to dismiss.

Courts have divided with regard to the level of specificity required in pleading the existence of a trade secret. Some have "accepted relatively general description of alleged secrets at the motion to dismiss stage." *Island Intellectual Prop., LLC v. StoneCastle Asset Management, LLC*, 463 F. Supp. 3d 490, 500 (S.D.N.Y. 2020). This has included descriptions of trade secrets as "technical data, internal pricing information, work product, research, [and] engineering designs," *Tesla Wall Sys., LLC v. Related Cos., L.P.*, 2017 WL 6507110, at *9 (S.D.N.Y. Dec. 18, 2017), and as "data and designs of a specific phone charger with horizontally folding A/C prongs," *Sorias v. National Cellular USA, Inc.*, 124 F. Supp. 3d 244, 259 (E.D.N.Y. 2015). But other courts have held that a plaintiff's merely "[a]lleging the existence of general categories of "confidential information without providing any details to generally define the trade secrets at issue" is insufficient to establish a trade secret's existence. *Elsevier Inc. v. Dr. Evidence, LLC*, 2018 WL 557906, at *6 (S.D.N.Y. Jan. 23, 2018) (emphasis in original) (citation and internal quotation marks omitted). The *Elsevier* court concluded that "extraordinarily

general categories" — such as the company's "ontology process and tools, including [the company]'s unique and proprietary process for 'binding' collecting original terms in a publication and then binding the like terms and synonyms to that original term" — were insufficient to give rise to a plausible allegation of trade secrets. *Id*. at *5–6.

Here, the Court concludes that Lavvan has provided sufficient specificity to allege a trade secret. Lavvan does describe its trade secrets in relatively broad terms: regulatory and business trade secrets about market opportunities and manufacturer selection. (Dkt. No. 29 at 17.) But it also explains how it turned these trade secrets into "presentations and analyses" that were shared with Lavvan, and details the efforts put into creating its analyses regarding cannabinoid commercialization, including considering "country-specific compliance requirements," and "collect[ing], review[ing], and synthesiz[ing] various public studies and regulatory findings." (Compl. ¶¶ 106, 143.) These allegations are sufficiently specific to plead the existence of a trade secret at this stage.

### b. Whether Amyris Misappropriated a Trade Secret

Amyris argues that Lavvan cannot show misappropriation because the trade secrets Amyris allegedly misused were shared lawfully, under the RCLA. (Dkt. No. 17 at 19–20.) This argument ignores the clear language of the DTSA, which defines misappropriation to include not just acquisition by improper means, but also "disclosure or use of a trade secret of another without express or implied consent by a person who . . . acquired [knowledge of the trade secret] under circumstances giving rise to a duty to maintain the secrecy of the trade secret or limit the use of the trade secret." 18 U.S.C. § 1839(5)(B).

Here, the RCLA included a confidentiality clause mandating that the parties "not use" trade secrets "for any purpose outside the scope of this Agreement." (RCLA § 8.2.) And

Lavvan has pleaded that, in developing new cannabinoids, Amyris used both Lavvan's trade secrets (Compl. ¶¶ 206–14), as well as Amyris's trade secrets that were licensed exclusively to Lavvan under the RCLA (Compl. ¶¶ 215–220). Such pleading is sufficient to survive a motion to dismiss.

\* \* \*

Lavvan has pleaded sufficient facts on its misappropriation of trade secrets claim to survive a motion to dismiss.

### 2. Patent Infringement

"Allegations that plead that a specific product [ ] allegedly infringes [the] patent by virtue of certain specific characteristics meet the *Iqbal* plausibility standard. *Iron Gate Sec., Inc. v. Lowe's Companies, Inc.*, No. 15 Civ. 8814, 2016 WL 1070853, at \*3 (S.D.N.Y. Mar. 16, 2016) (citation and internal quotation marks omitted). "A plaintiff is not required to list which of the claims in the patent have been infringed in its pleading; as the Federal Circuit has recently reiterated, 'a plaintiff need not even identify which claims are being infringed.'" *Id*. (citing *In re Bill of Lading Transmission & Processing Sys. Patent Litig.,* 681 F.3d 1323, 1334–35 (Fed. Cir. 2012)).

Amyris argues that Lavvan's patent claim consists solely of conclusory allegations. The Court disagrees. Lavvan has listed the patents it alleges were infringed. (Compl. ¶ 240.) It has described how Amyris allegedly infringed those patents. (Compl. ¶¶ 242–44.) Lavvan entered into the RCLA to gain an exclusive license to such patents, explaining that it would be challenging to "develop[] biosynthetic cannabinoids using yeast-based fermentation without infringing on Amyris's numerous patents." (Compl. ¶¶ 46, 61–73.) Lavvan alleges that Amyris is infringing these patents by developing its own cannabinoids and by producing cannabinoids

via fermentation, both processes that Lavvan argues necessitates use of Amyris's patents. (Compl. ¶ 244.)

Of course, Lavvan does not allege with precision "exactly which patent is the subject of its claims, which claims in any of those patents might have been infringe, or even which product, service, or activity of Amyris might give rise to any alleged infringement." (Dkt. No. 35 at 7.) But it is not required to do so at this stage. Intellectual property plaintiffs, when faced with an information disadvantage, may "plead[] facts alleged "upon information and belief" where the facts are peculiarly within the possession and control of the defendant, or where the belief is based on factual information that makes the inference of culpability plausible." *Lefkowitz v. McGraw-Hill Glob. Educ. Holdings, LLC*, 23 F. Supp. 3d 344, 356 (S.D.N.Y. 2014) (quoting *Avista Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010) (copyright); *see also Prowire LLC v. Apple, Inc.*, 2017 WL 3444689, at *6 (D. Del. Aug. 9, 2017) (finding patent plaintiff's allegation on information and belief was "plausible based on its other allegation and because it is the type of information in [defendant]'s sole control and [plaintiff] could not access it without discovery").

Here, Lavvan has pleaded sufficient facts to allow this Court to infer that Amyris may have used the patents licensed exclusively to Lavvan to develop and produce cannabinoids. It is unclear what additional facts Lavvan could have offered absent discovery. Of course, Amyris may yet prevail if discovery shows that it did not infringe the patents licensed exclusively to Lavvan. But as it stands, Lavvan's patent infringement claim survives a motion to dismiss.

### IV.     Conclusion

For the foregoing reasons, Amyris's motion to compel arbitration or, alternatively, to dismiss is DENIED.  Amyris shall file its answer within 21 days after the date of this opinion and order.

The Clerk is Court is respectfully directed to close the motions at Docket Numbers 13 and 36.

SO ORDERED.

Dated: July 26, 2021
       New York, New York

                                        J. PAUL OETKEN
                                        United States District Judge