L91AALAVC          Conference

1  UNITED STATES DISTRICT COURT
   SOUTHERN DISTRICT OF NEW YORK
2  ------------------------------x

3  LAVVAN, INC.,

4              Plaintiff,

5         v.                      20 CV 7386 (JPO)

6  AMYRIS, INC.,

7              Defendant.

8  ------------------------------x
                                  New York, N.Y.
9                                 September 1, 2021
                                  3:00 p.m.
10
   Before:
11
                    HON. J. PAUL OETKEN,
12
                                  District Judge
13
                        APPEARANCES
14
   CYRULNIK FATTARUSO, LLP
15      Attorneys for Plaintiff LAVVAN
   BY:  JASON C. CYRULNIK
16      PAUL FATTARUSO
        IAN DUMAIN
17      EVELYN FRUCHTER

18  GIBSON DUNN & CRUTCHER, LLP
        Attorneys for Defendant Amyris
19  BY:  MICHAEL D. CELIO
        MICHAEL B. CARLINSKY
20      H. MARK LYON
        DAVID MEYER

21

22

23

24

25

1          (Case called)

2          THE COURT:  Good afternoon.

3          This is Judge Oetken.  I'd like to start by reminding

4   everyone to, please, say your name each time you speak so that

5   the court reporter can take everything down.

6          This is a conference in LAVVAN, L-A-V-V-A-N, versus

7   Amyris, A-M-Y-R-I-S, 20 CV 7386.

8          Starting with the plaintiff's counsel, I'd like

9   counsel to, please, state your name for the record.

10          MR. CYRULNIK:  Good afternoon, your Honor.

11          This is Jason Cyrulnik, from Cyrulnik LLP, on behalf

12   of plaintiff.

13          THE COURT:  Good afternoon.

14          MR. FATTARUSO:  Hello.

15          This is Paul Fattaruso, also on behalf of plaintiff.

16          THE COURT:  Good afternoon.

17          MR. DUMAIN:  Ian Dumain, also from Cyrulnik Fattaruso,

18   for the plaintiff.

19          MS. FRUCHTER:  Evelyn Fruchter, from Cyrulnik

20   Fattaruso, also for the plaintiff.

21          MR. CYRULNIK:  That's everyone from the plaintiff's

22   side.

23          THE COURT:  All right.  Defense counsel?

24          MR. CELIO:  Good afternoon, your Honor.

25          Michael Celio, C-E-L-I-O, of Gibson Dunn & Crutcher

1   for Amyris.

2           THE COURT:  Good afternoon.

3           MR. LYON:  Also from Gibson Dunn, your Honor, mark

4   Lyon, L-Y-O-N, for Amyris.

5           THE COURT:  Good afternoon.

6           MR. CARLINSKY:  Michael Carlinsky, from Quinn Emanuel

7   for the defendant, as well.

8           THE COURT:  Good afternoon.

9           Anyone else?

10          MR. MEYER:  Good afternoon, your Honor.

11          David Meyer, also from Quinn, for the defendant.

12          THE COURT:  Anyone else?

13          MR. CELIO:  That should be everyone, your Honor.

14          THE COURT:  Okay.  Thank you all for joining.

15          Again, this is Judge Oetken and after my ruling on the

16  defendant's motion to compel arbitration and motion to dismiss

17  I scheduled a date for defendant to answer the complaint, which

18  I believe defendant has now done on August 23.  In the

19  meanwhile a notice of appeal was filed and there is right to

20  appeal under the statute, direct appeal to the Second Circuit

21  from a motion denying an order denying a motion to compel

22  arbitration.

23          In the meantime I do have a proposed case management

24  plan which I believe is agreed upon to the extent I do not

25  grant defendant's motion to stay discovery.  So, really, I just

1    wanted to do two things, make sure I understand everyone's

2    position, and hear a little bit about the motion to stay

3    discovery -- I'm sorry -- to stay the case pending the appeal.

4    And second, if I do decide to go forward with discovery in this

5    matter and not stay the case pending appeal, just to see if the

6    parties agree on the date.  I see that you attached additional

7    deadlines based on, I guess based on the Court's local patent

8    rules for things relating to patent infringement claims.

9         So, let me start -- I mean, I really have a few

10   questions.  I guess, I'll start with plaintiff's counsel,

11   whoever wants to speak.

12        I want to know a little bit more about the pending

13   arbitration.  Obviously, I held what I held in the decision.  I

14   determined that, basically, it's very clear in the agreement

15   that to the extent something is; an intellectual property

16   claim, it's not subject to arbitration.  And it's not even

17   within the realm of the arbitrator gets to decide is within the

18   scope of the arbitration.  But there is this arbitration.

19   Forget regarding contract claims.  I don't really know much

20   about it other than what defendant said in its briefs.

21        Is it fundamentally true that everything, business is

22   teed up to be decided in the arbitration is a bunch of contract

23   claims, is basically going to answer the questions about

24   infringement of patent and trade secrets?  Or is there some

25   daylight there that's not going to be resolved as a practical

1    matter?

2          MR. CYRULNIK:  Thank you, your Honor.  This is Jason

3    Cyrulnik.  I'll start and I'll also invite Ian Dumain to also

4    weigh in.

5          I think the short answer to your Honor's question is

6    that there is some daylight.  The arbitration does concern

7    interpretation of certain contractual provisions.  And

8    obviously, that there's fact finding that's going to go on

9    there in connection with Amyris's various alleged breaches.

10   And so, I think we would all agree that depending on the

11   various defenses that Amyris ultimately settles on in the

12   arbitration, there are going to be issues that are teed up in

13   the arbitration that will likely have implications on the scope

14   of the claims here and that will potentially play into the

15   Court's consideration of some of the issues.

16         That said, they are a very different set of claims, as

17   the Court recognized, and the as the arties recognize in

18   setting up with the contractual provision the way they did.

19   And I think there is daylight between the two, not only in

20   terms of the relief sought, but also in terms of the issues

21   that need to be, that require discovery and that need to be

22   decided by the Court in this case and by the tribunal in the

23   case of the arbitration.  So, I think depending on how the

24   timing plays out, I could certainly, candidly see some issues

25   where whether your Honor makes a decision or whether the

1   tribunal makes a decision where there will be potential

2   collateral estoppel on issues that plaintiffs have (inaudible)

3   the claims.  The arbitration hearing is not scheduled until the

4   very end of October, beginning of November of 2022.  And so, I

5   think depending on how things go with respect to each set of

6   claims, it would be that there likely would be some issues that

7   claims in both cases where whichever fact-finder makes that

8   decision or whether a joinder or tribunal makes decisions about

9   certain issues they will be brought to the attention of the

10  other tribunal.  But practically, we think that there's

11  daylight between the claims that they are not only in terms of

12  the relief sought but in terms of some of the issues that are

13  being litigated.

14      THE COURT:  I'll give defendants a chance to respond

15  to this as well.  But while I have you, Mr. Cyrulnik, you said

16  October, November 2022 for the hearing.  What is the discovery

17  look like?  I'm not, I don't remember the rules of ICC

18  arbitration and whether they provide for depositions.  You

19  know, is it sort of comparable document production to a federal

20  court litigation?  Are there depositions?  Is there a schedule

21  yet?

22      MR. CYRULNIK:  Yes, your Honor.  There is a schedule

23  in place.  I am happy to either share it with your Honor or to

24  walk through at a high level to the extent that level of detail

25  would be helpful.  But there is a schedule in place.  We're in

1    the middle of document discovery.  I think the initial requests

2    were served.  There's a tiered process there whether it's a

3    voluntary production and disputed issues.  On the document

4    production front, there's a tribunal.  But we certainly, think

5    that there's a lot of discovery that's going to take place

6    there on the issue that pertains to those claims.  I think the

7    parties have agreed, and this was presented at the tribunal at

8    the outset when we were setting the schedule, I think Amyris's

9    position was why don't we hold off on the arbitration setting

10   some schedule until we find out what your Honor thinks about

11   some patent claims.  I think the decision by the tribunal was

12   we'll wait for Judge Oetken to rule.  We'll see what Judge

13   Oetken says, but right now we're going to move forward with

14   discovery that's pertinent to these claims in this tribunal.

15   And you know, if something changes about the scope of the

16   arbitration, we'll then address the implication of the expanded

17   scope at that point in time.  So the intention was to always

18   proceed with the discovery on the claims that are arbitrable on

19   the timeline a (inaudible) in the ICC and to proceed with

20   patent related discovery in this court.  And so, I think we do

21   expect there to be depositions following the exchange of

22   document requests, document productions and the evolution of

23   received document production issues.

24        We have not yet delved on exactly what would take

25   place following the inclusion of document discovery, but we

1    invite these depositions depending on how those issues are

2    resolved on the document front.  There are witness statements

3    that largely, they are the function of getting the party's

4    position and the witness positions.

5            THE COURT:  All right.  Thank you.

6            Mr. Celio or anyone else who wants to speak for

7    defendant?

8            MR. CELIO:  Yes.  I can answer the question, is there

9    daylight, much more succinctly.  If we win, there is no

10   daylight.  We believe if we win in the arbitration, this case

11   is over because we will, we hope, have proved that LAVVAN does

12   not have the rights to use our intellectual property the way

13   that they say they want to.  Now, if we are not successful,

14   there may be some daylight in that we may have some additional

15   patent based defenses in terms of whether we are actually

16   practicing any of those things, whether there's actually any

17   damages.  But the answer is quite simple.  We think there is

18   very little daylight because we hope and expect we will

19   prevail.  So, that's a much simpler answer, I think.

20           In terms of what discovery looks like, yes, discovery,

21   I actually agree with most of what Mr. Cyrulnik said.

22   Discovery is already ongoing.  We have voluntarily produced a

23   bunch of documents.  A lot more will go out.  You know, in the

24   hearings, only thirteen months away at this point, thirteen and

25   a half months away, I guess, maybe.  so, they will have the

1    opportunity to examine our witnesses and we'll have the

2    opportunity to examine their witnesses.  Under the agreed

3    schedule that's, I think it's six months.  I think it's not

4    until March of next year that they're even scheduled to tell us

5    what they're infringement contentions are.  So, I actually

6    think that the arbitration is going to be, I don't know,

7    wrapped up.  I mean, obviously, the panel gets to decide when

8    it decides.  But we will be substantially along in that case

9    before we really get to the meat of the dispute before your

10   Honor.  And I think that that points for some equitable reasons

11   towards what we have been asking the Court to do here.

12            THE COURT:  Yeah.  I mean, I see that, but I also, on

13   the other hand, I am wondering about this sort of prejudice

14   irreparable injuries/prejudice argument you've made.  And I

15   wonder if you are going to be doing sort of the same discovery

16   about all of the contract stuff and business relationship and

17   who's researching what.  You're doing it sort of for purposes

18   of this case.  Aren't you doing in any way for the purpose of

19   the arbitration?

20            MR. CELIO:  So, I think there's overlap but it's not

21   precisely the same, your Honor.  It's not precisely the same

22   because we would not be getting into in the arbitration the

23   issues I said that won't come up if we prevail.  For example,

24   are we practicing the patents?  What those patents mean?

25   Obviously, there will not be unless there's a decision by the

1   Second Circuit contrary to what your Honor held, we will not be

2   having the equivalent of a Markman there.  So, the prejudice,

3   there's an entire set of disputes that overlap and then there's

4   additional disputes that we believe we never have to get to and

5   should never have to get to.

6          THE COURT:  Right.  I am cognizant of the fact that

7   this is a weird case in that -- and this was in the papers

8   before me earlier -- the parties are owned by Amyris.  So,

9   Amyris would be in the awkward position of not wanting to make

10  invalidity type arguments about its own patent and the only

11  infringement exists in the world where there was exclusive

12  license that was infringed of your own patent, i.e., your

13  client.

14         So, I realize that that's a little odd.  Is it your

15  position that the exclusive license granted to LAVVAN actually

16  permitted Amyris to keep doing things, notwithstanding, the

17  exclusive nature of it or that Amyris was limited but only to

18  the extent of the agreement.

19         MR. CELIO:  So, there's a dispute about the field.

20  There are both signed kinds of disputes.  There's a dispute

21  about the right that LAVVAN had to terminate this.  They were

22  the ones to terminate the agreement.  And whether they did that

23  for cause as they contend or not for cause, had a significant

24  impact.  Even if they're right on that question, there is then

25  the question as to who had what field.  There are two fields.

1   There's the LAVVAN field and the Amyris field.  We believe

2   we're right on both points.  We believe that they did have the

3   right to terminate the contract but we also believe we are

4   operating within our proper fields.

5          THE COURT:  OK.  Did someone else want to add

6   something?

7          MR. CYRULNIK:  Jacob Cyrulnik.

8          I want to address a couple of points that came up.

9          THE COURT:  Sure.

10         MR. CYRULNIK:  Just a couple of points.  First, on the

11  series of questions that your Honor asked about the overlap and

12  Mr. Celio's response that the patent -- discovery would not go

13  forward if they were to prevail in the arbitration.  I think, I

14  don't think this is lost on the Court, but just to put a fine

15  point on it, if there's no world in which the discovery that

16  Mr. Celio was describing discovery that is specific to the IP

17  claims and that includes not only the patent claims but also

18  the trade secret claims, which I'll address in a moment, but

19  that discovery needs to go forward.  It's just a question of

20  whether it goes forward in the SDNY as your Honor has ruled and

21  the case (Inaudible) or whether the claims are arbitral in

22  which case it would be going forward in the IP.  There is no

23  provision in the contract.  And I don't think my friends on the

24  other side would claim otherwise in any papers that we saw that

25  IP claims follow only from the completion of resolution of

1    claims concerning contractual violation or otherwise.  And so,

2    I think our understanding of Amyris's position is that they had

3    moved to compel arbitration that these claims would proceed

4    simultaneously just like they would be proceedings now, but

5    they wanted them all to be proceeding in ICC.  And, obviously,

6    that discovery would not then be limited to the claims that we

7    currently have in the arbitration but would include the

8    discovery on the patent and trade secret claims.

9         So, I don't think from our perspective there was any

10   material prejudice here.  The prejudice that I heard Mr. Celio

11   articulate was that, well, we have discovery on claims that we

12   think could be resolved if we prevail in the underlying claims

13   in the arbitration.  I think our response to that would be no

14   under, the plaintiff's position is that that discovery would

15   need to go forward anyway just in a different form.  So, the

16   question of prejudice would really reduce to whether or not,

17   not whether in discovery and related to pretrial work needs to

18   go forward on these claims at all, but whether there's a

19   prejudice resulting from the fact that it goes forward before

20   your Honor rather than in the ICC.

21        Just to note, in addition to the patent claim, the IP

22   claims that go forward in your Honor's courtroom include trade

23   secret claims including trade secrets that belong to LAVVAN

24   indisputably.  Obviously, there will be whatever defenses

25   Amyris runs with on why they are not violating those trade

1    secrets.  But practically speaking, the contractual issues that

2    Mr. Celio referenced with respect to the (inaudible) and your

3    Honor referenced with respect to the exclusive rights and it

4    was granted and so what LAVVAN put forth would not bear on the

5    trade secrets that Amyris is currently using from LAVVAN in

6    pursuing basically the very venture that they had agreed to

7    pursue through us and just doing it on their own now and

8    shutting us out.

9             THE COURT:  So, you're sort of carving out the trade

10   secrets saying that that is something that would not, that if

11   Amyris's position prevailed entirely in the litigation as to

12   the contract, you're saying that the patent claims admittedly

13   would go away but not the trade secrets claim you are talking

14   about?

15            MR. CYRULNIK:  The second piece certainly is our

16   position that the trade secret claims would go forward.

17   Obviously, at one point we're talking about the hypothetical

18   world in which Amyris prevails on everything, I suppose they'll

19   be taking certain positions that in theory might implicate our

20   trade secrets.  But practically speaking, the core issue

21   referenced earlier today in terms of the scope of the exclusive

22   license and those issues, they don't bear on the LAVVAN trade

23   secrets that didn't, that were not a function of any exclusive

24   license that was granted to us but there were instead taking

25   what we brought to the table on the cannabinoid side that we

1   allege Amyris is currently using as they pursue this venture on

2   their own.

3           So, the shorter answer to that would have been, yes,

4   we think among the rays of daylight that I was referring to

5   earlier, it's certainly the trade secret claims, we think would

6   not be directly impacted by the resolution of the contractual

7   issues that are before the ICC.  And the patent claims I think

8   we'd have to, it would depend on how precisely the tribunal

9   resolved those claims.  Obviously, if we prevailed, the patent

10  claims go forward full force.  If there's a world in which they

11  were restricted or they're various alternatives interpretations

12  that Amyris is lobbying the ICC to consider that are adopted

13  and it would depend on the scope of the ICC tribunal's

14  interpretation of various issues that could have implications

15  for the scope of our other infringement claim.

16          THE COURT:  OK.  Understood.

17          MR. CELIO:  If I could just respond with your Honor's

18  indulgence very briefly to the trade secret points?

19          THE COURT:  Sure.

20          MR. CELIO:  Two points.  One is we don't actually know

21  yet what these trade secrets are and we've built in the

22  schedule a time for them to define what those trade secrets

23  are.  My client doesn't know what they are and we're very

24  curious to find out what it is.  We're being accused of

25  infringing.

1          I would say second, as a practical matter while it may

2    be true that theoretically those claims could go forward, I

3    don't think that in the real world that would ever happen in

4    the hypothetical world in which we prevailed.  I think those

5    claims are in this case the tail of the dog or, maybe even

6    meaning no disrespect, the fleas on the tail of the dog.  This

7    case resolves then we win in the arbitration.  I really believe

8    that.  There may be some theoretical legal argument to the

9    contrary but I really, I think it all just turns on whether

10   there's a breach here.

11         THE COURT:  I get your point.  I was going to say, I

12   do think this is a situation, even though I read the agreement

13   as I did, it does seem like, I have had this several times in

14   copyright cases where there's a license and there's a question

15   of how far the license goes and as soon as the defendant

16   exceeds the license they're not only breaching the contract but

17   infringing copyright.  In those situations I've often stayed

18   discovery on summary judgment motion or a 12C motion on the

19   issue of the contract for the license because it's inefficient

20   for a bunch of IP discovery when it all turns on the contract.

21         As to the patent claims, this feels a little bit like

22   that and that's why it does feel a little more efficient to

23   have a tribunal rule on the contract claims because as a

24   practical matter they certainly seem like they might well

25   resolve the patent claim.  Although, Mr. Celio, I think

1    Mr. Cyrulnik makes a good point.  If there's an October 2022

2    hearing it's not like the arbitration panel is going to stay

3    discovery as I have.  If I put this, if I had granted your

4    motion, you would be doing full-blown tax discovery in the

5    arbitration, right

6            MR. CELIO:  Yes, your Honor, that's right.  And that,

7    frankly, is more efficient and fine.  There are considerable

8    cost savings.  Just speaking not only as a legal question but

9    just as to the equitable question.  There are considerable cost

10   savings to doing it once and doing it in one place.  And the

11   arbitral panel, as we put in other motion to stay, actually

12   resolved space in the schedule for that potentially to happen.

13   We are still open to that happening by agreement.  I understand

14   my friend on the other side is not interested in that but we'd

15   still be willing to do that by agreement.

16           THE COURT:  Let me ask you, Mr. Cyrulnik, just in

17   terms of your client's money and having this proceeding stayed

18   or partially stayed in my court as they request or going

19   forward, going forward in my court, maybe the trade secret only

20   goes forward and then having an appeal that Mr. Celio filed in

21   the Second Circuit and then also an arbitration, doesn't that

22   seem wasteful?  Why don't you just agree to have the

23   arbitration panel decide everything?

24           MR. CYRULNIK:  I appreciate the question, your Honor.

25   I think my answer would consist in two parts.  Look, as a

1  practical matter, I think what I am hearing Mr. Celio to be

2  advocating for is a result that I think it would be somewhat

3  sui generis and a function of the procedural posture here.  If

4  everything proceeding in the arbitration, we would be having a

5  discovery on everything.  And so, it seems like the position

6  that Amyris is asking that we should somehow because we

7  prevailed in with respect to the motion to compel arbitration,

8  we should now be in a position that never would have been

9  contemplated by the parties which would effectively stay

10  discovery of all patent and trade secret claims pending

11  resolution of any contractual issues.

12        The answer to your Honor's -- question is, this is our

13  client's entire business.  They invested everything in this

14  venture.  They put everything on the line.  They hired world

15  class teams.  This was an absolutely mammoth undertaking and

16  they put everything into it and right now they're watching

17  everyday.  I exaggerate by saying everyday, but almost on a

18  regular basis they are watching Amyris publicly announce

19  additional undertakings and accomplishments on the very venture

20  that they are supposed to be doing with LAVVAN as LAVVAN sits

21  here reading about those things and being shut out with their

22  intellectual property being used and Amyris benefiting from

23  that which is public announcement on a regular basis.  And this

24  is an emerging market with a lot of promise and my clients have

25  a lot to contribute in that regard.  That's why they were one

1    of the reasons why this partnership was poised for success.

2    And I think our position is, notwithstanding, any potential

3    additional expenses, although, I don't think it's particularly

4    inefficient -- for the reasons I'll get to in just a moment --

5    but, notwithstanding, the expense involved, this litigation and

6    resolution of these claims is critical because there are a lot

7    of people who invested a lot of time, money and their lives

8    into this venture which Amyris has basically taken away.  This

9    is our version of the facts.  But Amyris has taken away from

10   LAVVAN and the company is literally just sitting here waiting.

11   The only recourse it has is through the legal process, be it

12   (inaudible) or through the arbitration.

13          So, it is an investment and it is unfortunate that

14   Amyris effectively decided to take my client's initial

15   investment in all it's done and just proceed with the venture

16   but that's the situation we find ourselves in and that's an

17   expeditious resolution of the various pieces, the way Amyris

18   has done wrong in our view.  It's critical to many, many people

19   and families and the like.  So, that's why the (inaudible).

20          In terms of the inefficiencies, I think as a practical

21   matter, we just don't view it as particularly inefficient.  we

22   have no interest in duplicating discovery.  We have no interest

23   in getting discovery from each of our claims.  That discovery,

24   we're happy to (inaudible).  Practically speaking we are going

25   to get the documents.  If the document requests that are

1    particular to the patent claims or the trade secret claims,

2    we're going to serve those.  We don't need to get documents

3    that we also got in the ICC we produced.  And I think there are

4    ways to do this efficiently.  I've litigated in two different

5    forums and circumstances in ways that are efficient as long as

6    the parties and particularly counsel are committed to trying to

7    streamline the process.  But I think when you tear through the

8    sort of spatial appeal of proceeding in one place, I think

9    there really is not that much duplication or ways that we

10   foresee at all.  There may be some differential in terms of the

11   scope of available discovery.  I think there's a lot of overlap

12   but there may be some difference and the differences in which

13   where we will get discovery, we're entitled to.  But we can

14   streamline this process in a way where we get all the

15   information together during this, the upcoming months, that

16   period.  And we are all poised to go forward on each of our

17   claims and in the proper forum so that we don't further delay

18   the right that our client has if we're able to prevail on our

19   claims.

20         THE COURT:  Okay.  Well, Mr. Celio, I probably should

21   give you a chance to respond to that.  There are points

22   Mr. Cyrulnik made about the merits.  I have not gone into the

23   merits of the business dispute here.  I'm sure there are strong

24   feelings on both sides but is there anything you would like to

25   respond to.

1          MR. CELIO:  Thank you, your Honor.

2          The only thing I'd like to say is this desire to move

3     quickly that I hear counsel making so strenuously, so

4     passionately, is in some tension with the schedule that they

5     have proposed and that we agreed to and that we have submitted

6     directly to your Honor, we can get all of this done and we can

7     have this entire case submitted to a panel in 13 and a half/14

8     months.  And under the schedule that we've jointly provided to

9     your Honor, we aren't even going to find out what the

10    infringement contentions are for half of the year.  So, I think

11    the efficiently point really speaks for itself.  And again,

12    we'd have to do it by consent in light of your Honor's ruling.

13         But I want to state that it's our position, we've said

14    it many, many times that if we want to do this quickly and we

15    want to do it once and we want to do it more in court, we would

16    agree to have the entire thing in front of the arbitral

17    tribunal who exists already, who knows about this case and who

18    said they would take it if it's brought to them.

19         MR. CYRULNIK:  Your Honor, if I could make one point

20    on that?

21         I don't think that's accurate.  the Schedule that we

22    have in the ICC is predicated on there being only the contract

23    related claims in the ICC and the patent claims not being put

24    in there.  In fact the initial conferences as I think I alluded

25    to at the outset, Amyris had suggested either staying that case

1    pending this Court's resolution or building in different

2    scheduling deadlines on the chance that patent claims would go

3    into the ICC arbitration.  That would obviously be a much

4    broader case.  And that existing schedule does not at all

5    contemplate that and expressly would need to be amended

6    materially if those claims were brought into this.  So, I don't

7    think there's any real argument that this case could be

8    completed in 14 months with the patent claims (inaudible)

9    arbitration.

10           THE COURT:  Okay.

11           MR. CELIO:  I respectfully disagree and I am

12   committing to trying to get that done.  We've become fast

13   friends and speak frequently because of all these matters.  So,

14   I'm going to speak to him later today about some other matters.

15   I'm happy to talk to him again about what specifically the

16   proposal is.  But I'd certainly, be very open to moving this

17   one forward.

18           THE COURT:  Okay.  Why don't you confer about it and

19   present it to me?

20           MR. CELIO:  Very good.  Thank you, your Honor.

21           UNIDENTIFIED MALE VOICE:  Your Honor, it would require

22   work but I think that I think the one place there is common

23   ground between our desire to resolve this dispute, to move it

24   forward and I think Amyris's position is a lot clearer and a

25   lot simpler and we can phase it in the ICC.  There's a lot of

1    things that experienced counsel like we have in this case can

2    do, and I think it just makes a ton more sense to do it in one

3    place rather than in three.

4              THE COURT:  It's a tough call but I've decided to stay

5    the case.  Part of that is, obviously, it's applying the

6    factors that you all agree and it's also in light of the fact

7    that the arbitration statute provides for a direct appeal from

8    a motion or an order denying to compel arbitration and the fact

9    that there are substantial questions going to the merits.  I've

10   read the contract as fair and clear but I am also cognizant as

11   I've said of fact that these particular patent claims which are

12   driving, I think driving the car here or the bus or whatever it

13   is are, they're derivative of the scope of the contract in the

14   sense that the meets and bounds of the excusive license really

15   determine ultimately whether there is infringement here.

16             So, there are arguments both ways.  I think there's

17   substantial argument and I do think that having the parties go

18   forward with discovery when there's an arbitration on the

19   contract issues would be irreparable harm in the sense that is

20   contemplated by the arbitration statute.  And I find that the

21   other factors including the public interests equity weigh in

22   favor on balance of the stay.  So, I am going to stay this case

23   and I'll ask for updates every six months and in any event when

24   there's any ruling or ruling from the arbitration panel for any

25   settlement.

1           All right.  Thank you everyone.

2           Anything else from Mr. Cyrulnik.

3           MR. CYRULNIK:  Thank you, your Honor.

4           If I could just clarify the stay is pending resolution

5    of the appeal; is that right?

6           THE COURT:  That's right.

7           MR. CYRULNIK:  Would your Honor consider, and I

8    haven't discussed this with Mr. Celio, so it's possible we

9    could agree on it but I just throw it out there because we have

10   the Court on the phone and we have the Court's ruling on the

11   stay issue, we would like to expedite the appeal so as to limit

12   the impact of the stay on the progress of the case as we had

13   just talked about.  Is that something I guess I would ask the

14   Court if your Honor would consider considering the stay on the

15   parties applying for an expedited resolution of appeal and I

16   say that only because I haven't had a chance to confer with

17   Mr. Celio -- given his statement a few moments ago, given the

18   interest in having things resolved expeditiously, having that

19   view, he would agree to that anyway by but I want ask the

20   Court --

21          THE COURT:  Let me ask Mr. Celio if he would like to

22   respond first.

23          MR. CELIO:  Thank you, your Honor.

24          We absolutely want to move the Second Circuit case

25   forward as quickly as possible.  It is an interesting issue.

1  It's something we would be prepared to brief quickly.  I'm not

2  sure what the process is that's being put to me.  We have other

3  business.  We've become fast friends and speak frequently

4  because of all of these matters.  I'm going to speak with him

5  later today an I am happy to talk to him later but I'd

6  certainly be very open to moving this one forward.

7          THE COURT:  Why don't you confer about it and present

8  anything to me that you are unable to resolve.

9          MR. CELIO:  Very good.  Thank you, your Honor.

10         MR. CYRULNIK:  Thank you, your Honor.

11         THE COURT:  All right.  Thanks, everyone.

12         (Adjourned)

13

14

15

16

17

18

19

20

21

22

23

24

25