MANDATE

N.Y.S.D. Case #
20-cv-7386(JPO)

21-1819
*LAVVAN, Inc. v. Amyris, Inc.*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 15th day of September, two thousand twenty-two.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: ______________
DATE FILED: Oct 06 2022

Present:

DEBRA ANN LIVINGSTON,
*Chief Judge*,
BARRINGTON D. PARKER,
EUNICE C. LEE,
*Circuit Judges*.

---

LAVVAN, INC.,

*Plaintiff-Appellee*,

v. 21-1819

AMYRIS, INC.,

*Defendant-Appellant*.

---

For Plaintiff-Appellee: JASON CYRULNIK (Paul Fattaruso, *on the brief*), Cyrulnik Fattaruso LLP, New York, New York.

For Defendant-Appellant: MICHAEL D. CELIO (Daniel R. Adler, Matt Aidan Getz, *on the brief*), Gibson, Dunn & Crutcher LLP, Palo Alto, California.

Appeal from a judgment of the United States District Court for the Southern District of



MANDATE ISSUED ON 10/06/2022

New York (Oetken, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**, and the case is **REMANDED** for further proceedings consistent with this order.

Defendant-Appellant Amryis, Inc. ("Amyris") appeals from a July 26, 2021 opinion and order of the district court (Oetken, *J.*) denying Amyris's motion to compel arbitration. Plaintiff-Appellee LAVVAN, Inc. ("Lavvan") brought an action against Amyris in the district court on September 10, 2020, claiming both trade secret misappropriation under the Defend Trade Secrets Act and patent infringement. On appeal, Amyris argues that this Court should reverse the district court's denial of its motion to compel arbitration on the grounds: (1) that the parties delegated the question of arbitrability to an arbitrator to decide; and (2) that even if this is not the case, Lavvan's claims are subject to arbitration.

Under the Federal Arbitration Act ("FAA"), "[a] written provision in any . . . contract . . . to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable." 9 U.S.C. § 2. "Although 'the Federal Arbitration Act ("FAA") embodies a national policy favoring arbitration[,] a court may order arbitration of a particular dispute only where the court is satisfied that the parties agreed to arbitrate *that dispute*.'" *ExxonMobil Oil Corp. v. TIG Ins. Co.*, 44 F.4th 163, 175 (2d Cir. 2022) (quoting *Cooper v. Ruane Cunniff & Goldfarb Inc.*, 990 F.3d 173, 179 (2d Cir. 2021)). We "review *de novo* the denial of a motion to compel arbitration, and the issue of whether arbitrability is for the court or for the arbitrator." *DDK Hotels, LLC v. Williams-Sonoma, Inc.*, 6 F.4th 308, 316 (2d Cir. 2021) (quotation marks, citations, and alterations omitted). "The district court's factual findings are

reviewed for clear error." *Soliman v. Subway Franchisee Advert. Fund Tr., Ltd.*, 999 F.3d 828, 833 (2d Cir. 2021).

For the following reasons, we **AFFIRM** the district court's denial of Amyris's motion to compel arbitration and **REMAND** the case for further proceedings consistent with this order. We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal, which we reference here only as necessary to explain our decision.

* * *

*1. Who Decides the Question of Arbitrability*. We first address Amyris's argument that the parties delegated the issue of arbitrability to an arbitrator to decide. At the start, parties may "agree by contract that an arbitrator, rather than a court, will resolve threshold arbitrability questions as well as underlying merits disputes." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 527 (2019). To be sure, "'threshold questions of arbitrability,' such as whether the arbitration agreement applies to a particular dispute, 'presumptively should be resolved by the court and not referred to the arbitrator.'" *DDK Hotels*, 6 F.4th at 317 (quoting *Doctor's Assocs., Inc. v. Alemayehu*, 934 F.3d 245, 250–51 (2d Cir. 2019)). The Supreme Court has recently reaffirmed that courts "should not assume that the parties agreed to arbitrate arbitrability unless there is clear and unmistakable evidence that they did so." *Henry Schein*, 139 S. Ct. at 531 (quoting *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)).

We apply principles of contract law to determine whether parties intended to arbitrate arbitrability. *See, e.g.*, *DDK Hotels*, 6 F.4th at 316; *Metro. Life Ins. Co. v. Bucsek*, 919 F.3d 184, 191 (2d Cir. 2019); *Wells Fargo Advisors, LLC v. Sappington*, 884 F.3d 392, 394–396 (2d Cir. 2018); *PaineWebber Inc. v. Bybyk*, 81 F.3d 1193, 1199 (2d Cir. 1996). In the absence of specific language evidencing such an intent, "[b]road language expressing an intention to arbitrate all

aspects of all disputes," we have said, "supports the inference of an intention to arbitrate arbitrability, and the clearer it is from the agreement that the parties intended to arbitrate the particular dispute presented, the more logical and likely the inference that they intended to arbitrate the arbitrability of the dispute." *Bucsek*, 919 F.3d at 191. "In contrast, the clearer it is that the terms of the arbitration agreement reject arbitration of the dispute, the less likely it is that the parties intended to be bound to arbitrate the question of arbitrability." *Id.*

The district court correctly decided that there was not "clear and unmistakable evidence" of an intent to arbitrate arbitrability in the parties' Research, Collaboration and License Agreement ("RCLA"). The RCLA contains two subsections related to dispute resolution, subsection 7.1.1, committing to arbitration "[a]ll disputes that cannot be resolved by the management of both Parties," and a separate subsection, subsection 7.2.1, specifying that if "a dispute arises with respect to the scope, ownership, validity, enforceability, revocation or infringement of any Intellectual Property, . . . such dispute will not be submitted to arbitration and either Party may initiate litigation." SPA-2. Because the agreement commits some types of disputes to litigation, it does not express a broad intent to arbitrate "all aspects of all disputes." *Bucsek*, 919 F.3d at 191.

Amyris's argument that the RCLA's incorporation of the ICC rules provides "clear and unmistakable evidence" of an intent to arbitrate arbitrability is unavailing. It is true that the incorporation of procedural rules that empower an arbitrator to decide arbitrability can in some circumstances serve as "clear and unmistakable evidence" of an intent to arbitrate arbitrability, but not where, as here, "other aspects of the contract create ambiguity as to the parties' intent." *DDK Hotels*, 6 F.4th at 318. The ICC rules are incorporated into only one of the dispute resolution subsections, and not into the subsection that exempts intellectual property disputes from

arbitration. This structure suggests that the parties intended for the ICC rules to apply only to those disputes that the parties agreed to arbitrate, which excludes the disputes identified in subsection 7.2.1.

Contrary to Amyris's claim, this construction of the parties' agreement is fully consistent with the Supreme Court's analysis in *Henry Schein.* As we have said before, *Henry Schein* does not prohibit "a court considering whether [an] arbitration agreement confers authority over arbitrability on the arbitrators [from] consider[ing] whether the agreement calls for arbitration of the dispute." *Bucsek*, 919 F.3d at 195. Instead, *Henry Schein* simply makes clear that "where the parties *have agreed* to submit arbitrability to arbitration," courts may not ignore such agreement and take the issue out of arbitration on the theory that the claim of arbitrability is itself groundless. *Id.* But this does not prevent courts properly addressing the delegation issue from applying ordinary contract principles and "consider[ing] all pertinent evidence," including evidence that the parties intended to litigate a particular category of disputes. *Id.* at 196.

*2. Arbitrability*. We next address Amyris's argument that, even assuming the district court properly determined that the question of arbitrability was for it, the court erred in concluding that Lavvan's claims are not subject to arbitration. Amyris contends, *inter alia*, that Lavvan's claims derive from the same set of circumstances that Lavvan has brought to an arbitral tribunal, that it is at least ambiguous whether Lavvan's claims fall under the carveout for intellectual property disputes in the RCLA, and that any ambiguity should be resolved in favor of arbitration. For the following reasons, we agree with the district court that Lavvan's claims are not arbitrable.

At the start, "[w]here the question is whether a given dispute falls within the scope of the arbitration agreement (and is therefore arbitrable), '[a]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration.'" *DDK Hotels*, 6 F.4th at 317 (quoting *First*

*Options*, 514 U.S. at 945). That said, "arbitration is a matter of contract . . . and . . . it is the language of the contract that defines the scope of disputes subject to arbitration[.] Thus, parties may be compelled to arbitrate disputes—but only those disputes—that they have contracted to submit to arbitration." *NASDAQ OMX Grp., Inc. v. UBS Sec., LLC*, 770 F.3d 1010, 1033 (2d Cir. 2014) (citations and quotation marks omitted). Accordingly, the presumption of arbitrability "may tip the scale if an agreement is truly ambiguous, . . . but it does not alter the controlling question: is the arbitration agreement 'best construed to encompass the dispute'?" *Lloyd v. J.P. Morgan Chase & Co.*, 791 F.3d 265, 270 (2d Cir. 2015) (quoting *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 303 (2010)).

Here, the claims asserted in Lavvan's complaint are clearly disputes of the sort exempted from arbitration in subsection 7.2.1: disputes "with respect to the scope, ownership, validity, enforceability, revocation or infringement of any Intellectual Property." SPA-2. Lavvan's first claim is trade secret misappropriation under the Defend Trade Secrets Act, encompassing both trade secrets Lavvan allegedly owns and trade secrets for which it holds an exclusive license. Lavvan claims that Amyris "continues to misappropriate Lavvan's proprietary information through its commercialization efforts," including by disclosing or using trade secrets without Lavvan's consent and improperly acquiring knowledge of trade secrets. A-86. This dispute thus clearly concerns the "ownership," "enforceability," and "infringement" of intellectual property rights held by Lavvan and Amyris. Similarly, Lavvan's second claim is for patent infringement, including of twenty specific patents named in the complaint. Lavvan claims, *inter alia*, that Amyris infringed the patents licensed to Lavvan by using them, without authorization, to "develop, manufacture, and commercialize cannabinoids." A-93. This claim thus clearly asserts the alleged "infringement" of intellectual property rights.

Lavvan's allegations, which describe, *inter alia*, the nature of the trade secrets it asserts it owns or licenses and the specific patents it alleges were infringed, are not mere "legal labels" attached to claims that otherwise fall within the scope of an arbitration provision. *Collins & Aikman Prod. Co. v. Bldg. Sys., Inc.*, 58 F.3d 16, 21–22 (2d Cir. 1995) (holding that "[i]n determining whether a particular claim falls within the scope of the parties' arbitration agreement, we focus on the allegations in the complaint rather than the legal causes of action asserted" (citation omitted)). Moreover, contrary to Amyris's argument on appeal, the fact that these intellectual property claims are intertwined with the contractual issues currently being arbitrated provides no basis on which to require claims exempted from arbitration to be subject to it. *See Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 20 (1983) ("[F]ederal law *requires* piecemeal resolution when necessary to give effect to an arbitration agreement.").

We have considered Amyris's remaining arguments and find them to be without merit. Accordingly, we **AFFIRM** the judgment of the district court and **REMAND** the case for further proceedings consistent with this order.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk

UNITED STATES SECOND CIRCUIT COURT OF APPEALS

Catherine O'Hagan Wolfe

A True Copy
Catherine O'Hagan Wolfe, Clerk
United States Court of Appeals, Second Circuit
UNITED STATES SECOND CIRCUIT COURT OF APPEALS
Catherine O'Hagan Wolfe